**LAW OFFICE OF JERRY L. STEERING**
Jerry L. Steering, Esq. (SBN 122509)
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Telephone: (949) 474-1849
Facsimile: (949) 474-1883
Email: jerry@steeringlaw.com; jerrysteering@yahoo.com

**LAW OFFICE OF GREGORY PEACOCK**
Gregory Peacock, Esq. (SBN. 277669)
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Telephone: (949) 292-7478
Email: gregorypeacockesq@gmail.com

Attorneys for plaintiffs Joseph Bernardo and Jessica Garcia as guardian ad litem
for Minors J.J.B. II and J.J.B. III

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BERNARDO, and JESSICA GARCIA as guardian ad litem for Minors J.J.B. II and J.J.B. III,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY OF GUADALUPE; ANDREW BREDA, FRANK MEDINA, CHRISTOPHER OROZCO and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 2:24-cv-09493-FMO-MAA<br><br>**DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA**<br><br>**DATE:    JANUARY 29, 2025**<br><br>**UNITED STATES DISTRICT JUDGE FERNANDO M. OLGUIN** |

I, Jerry L. Steering, do hereby declare that the facts set forth herein are based

upon my personal knowledge and upon information and belief and if called upon to

testify I could do so competently:

1.    I am counsel of record for plaintiffs Joseph Bernardo and Jessica Garcia as guardian ad litem for Minors J.J.B. II and J.J.B. III in this action.

2.    Plaintiffs filed this action on November 1, 2024 [Civil Docket Item1].

3.    Plaintiffs' Complaint alleges that on September 26, 2023 that defendants City of Guadalupe Police Department Officers Andrew Breda, Frank Medina and Christopher Orozco used excessive force (a taser)[1] against plaintiff Joseph Bernardo and did so in front of his children, minor plaintiffs J.J.B. II and J.J.B. III, and thereafter procured Joseph Bernardo's malicious criminal prosecution.

4.    This Honorable Court issued a Summons for plaintiffs' Complaint on November 5, 2024 [Civil Docket Item 5].

5.    Plaintiffs then served the Summons and Complaint on all defendants on November 14, 2024 at the Guadalupe Police Department. See, Proofs of Service on defendants City of Guadalupe, Andrew Breda, Frank Medina and Christopher Orozco [Civil Docket Items 15-18].

6.    City of Guadalupe Police Department Chief Michael Cash accepted service for all three individual defendants, including Andrew Breda. [Civil Docket Items 15-18].

7.    On December 3, 2024, defendants City of Guadalupe, Frank Medina and Christopher Orozco filed their Answer to plaintiff's Complaint in this action [Civil Docket Item 23].

---

[1] The excessive force claim against Frank Medina and Christopher Orozco is for their failure to intervene.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION
TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

2

8.      On December 3, 2024, my co-counsel, Gregory Peacock, had a telephonic conversation with defense counsel James Procter. During that conversation Mr. Procter told Mr. Peacock that defendant Andrew Breda was no longer employed by the Guadalupe Police Department. Mr. Procter did not tell Mr. Peacock that he was not going to represent Mr. Breda or that it was his position that Mr. Breda had not been properly served. See, Declaration Of Gregory Peacock In Response To The Court's Order To Show Cause [Civil Docket Item 27].

9.      On December 10, 2024, this Honorable Court issued an Order to Show Cause instructing plaintiffs to either file an application for entry of default against Defendant Andrew Breda, or Andrew Breda could file a responsive pleading by December 17, 2024 [Civil Docket Item 26].

10.     On December 13, 2024, my co-counsel Gregory Peacock sent an email defense counsel stating the following:

"Hi Lisa and Jim, Will you be filing a responsive pleading for Officer Breda? The Court had Ordered me to file an application for entry of default by next Tuesday, December 17, 2024. Greg." See, Declaration Of Gregory Peacock In Response To The Court's Order To Show Cause ¶ 10 [Civil Docket Item 27].

11.     Later that day, defense counsel Lisa Shyer responded to Mr. Peacock's email as follows:

"Hello, Have you served him? He no longer works for the City. Lisa Shyer". See, Declaration Of Gregory Peacock In Response To The Court's Order To Show Cause ¶ 11 [Civil Docket Item 27].

12.     Mr. Peacock then informed Ms. Shyer that the Chief of Police accepted service on behalf of defendant Andrew Breda and he attached the Proof of Service of the Summons and Complaint for

Defendant Andrew Breda in an email to her. See, Declaration Of Gregory Peacock In Response To The Court's Order To Show Cause ¶ 12 [Civil Docket Item 27].

13.  On Monday, December 16, 2024, Ms. Shyer sent Gregory Peacock an email informing him that the City did not accept service on behalf of Mr. Breda. See, Declaration Of Gregory Peacock In Response To The Court's Order To Show Cause ¶ 12 [Civil Docket Item 27].

14.  This was the first time that Gregory Peacock and I were made aware that it was the City defendants' position that defendant Andrew Breda had not been served with the Summons and Complaint in this case[2].

15.  On December 16, 2024, my co-counsel, Gregory Peacock, and I began attempting to locate defendant Andrew Breda so that we could effect service of the Summons and Complaint in this case on him.

16.  During Mr. Peacock's December 3, 2024 conversation with Mr. Procter, he informed Mr. Peacock that he believed that Andrew Breda was living somewhere in Alaska. See, Declaration Of Gregory Peacock In Response To The Court's Order To Show Cause ¶ 16 [Civil Docket Item 27].

17.  I did an internet / Google search for defendant Andrew Breda and learned that Mr. Breda was possibly employed as a peace officer by the City of Unalaska, Alaska.

18.  On December 16, 2024 I discovered online that defendant Andrew Breda was sworn in as a City of Unalaska Police Department police

---

[2] See also, Declaration of Gregory Peacock in Response to The Court's Order to Show Cause ¶ 14 [Civil Docket Item 27].

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

4

officer on November 9, 2021. See, attached Exhibit A-2, a true and correct copy of the Unalaska City Council Minutes of November 9, 2021 showing Andrew Breda sworn-in as an Unalaska Police Officer.

19.    On December 16, 2024 I called the City of Unalaska and learned that defendant Andrew Breda was not working for the City of Unalaska and that there was an open civil lawsuit in which Andrew Breda was suing the City of Unalaska.

20.    On December 16, 2024 I also did more online research for some court in which that lawsuit referenced by the City of Unalaska told me about by Andrew Breda against the City of Unalaska was filed in, and I learned that there are no county's in Alaska and the local court is the Court of the State of Alaska for the Unalaska Borough.

21.    I could not find any lawsuit filed by Andrew Breda against the City of Unalaska.

22.    I also called the Unalaska Police Department and spoke with the front office, with Sgt. Bliss and with Human resources (Amy Stanford), and with the Assistant City Manager.

23.    They said that Andrea Breda did not work at the Unalaska Police Department, that they did not know where he was, and that they did not know who his lawyer was or know anyone that knew where Andrew Breda was residing.

24.    On December 16, 2024 I continued my online research and learned that as of December 16, 2024 that defendant Andrew Breda was employed as a police officer for the City of Dillingham, Alaska,

25.    I also learned that Mr. Breda was hired by the City of Dillingham as a police officer in late January 2024 and that as of February 22, 2024 that he was out on Worker's Compensation Leave from the

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

Dillingham Police Department. See, attached Exhibit "B", a true and correct copy of a Memorandum of February 2, 2024 from the Dillingham Police Department Report regarding Andrew Breda on Worker's Compensation leave.

25.    Thereafter, I called the City of Dillingham Police Department to confirm that Mr. Breda was employed there and to attempt to arrange for Mr. Breda to be served with the Summons and Complaint.

26.    No one answered my phone call at the Dillingham Police Department and I left a voicemail at the police department identifying myself and asking that someone from the Dillingham Police Department call me back about my effort to locate and contact defendant Andrew Breda.

27.    Thereafter, I sent an email to the Chief of Police for the City of Dillingham, Alaska, Tracy O'Malley, asking the Chief to assist in effecting service of the Summons and Complaint in this lawsuit on his subordinate officer, defendant Andrew Breda. See, attached Exhibit "C"; a true and correct copy of my December 16, 2024 email to Dillingham, Alaska, Chief of Police Tracy O'Malley. I also attached a copy of the Summons and Complaint, and the Waiver of Service of Summons Form and the Acknowledgement of Receipt of Lawsuit Form in that email to Chief O'Malley.

28.    On December 19, 2024 I received an email from Amy Stanford, the Human Resources Manager of the City of Unalaska informing me: "Regarding Andrew Breda, we have nothing new to add to what we confirmed when speaking with you - Andrew Breda is not an employee of the City of Unalaska and he does not live in Unalaska"; See, attached Exhibit "D", a true and correct copy of that December

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

19, 2024 email to me from Amy Stanford.

29.    I had not been able to locate Andrew Breda and I was hoping that my efforts to serve Andrew Breda via the Waiver of Service of Summons via his current Chief of Police in the Dillingham Police Department would pan out.

30.    However, that did not happen.

31.    I thereafter hired private investigator Joseph Travers to locate Andrew Breda.

32.    However, he only provided several addresses for him, the most recent address being his parents' home in Los Angeles that has him living there from 2013 through 2025. See, attached Exhibit "E", a true and correct copy of the Report from Private Investigator Joseph Travers on Andrew Breda's addresses.

32.    None of those addresses are definitive, and I do not have a present residence address for defendant Andrew Breda.

33.    I have also been continuing to call the Dillingham Police Department and the City of Dillingham Human Resources office.

34.    The Dillingham Police Department will not tell me whether or not defendant Andrew Breda still works for that agency, and the Dillingham Human Resources Department won't answer their telephone or return my phone calls.

35.    I went back to searching for Andrew Breda on the internet, and I learned that on December 17, 2024 he filed a lawsuit against defendant City of Guadalupe, California for basically wrongfully terminating him from his job as a police officer with defendant City of Guadalupe. See, attached Exhibit "F"; a true and correct copy of the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

lawsuit that I found by defendant Andrew Breda against defendant City of Guadalupe.

36.    From that lawsuit, I have learned the identities of the lawyers and law firm who is representing defendant Andrew Breda in his lawsuit against defendant City of Guadalupe; Louis V. Kosnett and Dan B. Yakobian with the KOSNETT LAW FIRM in Los Angeles. See attached Exhibit "F-1", a true and correct copy of that lawsuit.

37.    I have been calling Mr. Kosnett and Mr. Yakobian and leaving phone messages with their office for them to call me about Andrew Breda.

38.    However, notwithstanding my repeated phone calls to them, they have not returned my phone calls.

39.    Thereafter, on January 27, 2025 I emailed defendant Andrew Breda's lawyers, Mr. Kosnett and Mr. Yakobian, sending them a copy of the Summons and Complaint in this case, along with the Waiver of Service of Summons and the Acknowledgement of Receipt of Summons and Complaint and asking them to accept service for their client, defendant Andrew Breda. See, attached Exhibit "G"; a true and correct copy of my January 27, 2025 email to Mr. Kosnett and Mr. Yakobian.

39.    At this point, it seems that I will need to need to serve defendant Andrew Breda by publication, as no one is cooperating with me and with Gregory Peacock in locating defendant Andrew Breda or accepting service of the Summons and Complaint for him.

40.    Accordingly, based on the above and foregoing, on behalf of the plaintiffs in this case, I am requesting an enlargement of time of 90 days or by whatever this Honorable Court deems a reasonable amount of time in this action to serve defendant Andrew Breda in in this case.

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

I declare under penalty of perjury under the laws of the United States of America that the above and foregoing is true and correct. This the 29th day of January, 2025 at Newport Beach, California.

_/s/ Jerry L. Steering_____

JERRY L. STEERING, ATTORNEY FOR PLAINTIFFS

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION
TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "A"

**Regular Meeting**
**Tuesday, November 9, 2021**
**6:00 p.m.**

**Council Members**
Thomas D. Bell
Darin Nicholson
Daneen Looby

**Unalaska City Hall**
**Council Chambers**
**43 Raven Way**

**Council Members**
Dennis M. Robinson
Alejandro R. Tungul
Shari Coleman



*To Provide a Sustainable Quality of Life*
*Through Excellent Stewardship of Government*

## UNALASKA CITY COUNCIL
P. O. Box 610 • Unalaska, Alaska 99685
Tel (907) 581-1251 • Fax (907) 581-1417 • www.ci.unalaska.ak.us

Vincent M. Tutiakoff Sr., Mayor
Erin Reinders, City Manager
Marjie Veeder, City Clerk mveeder@ci.unalaska.ak.us

---

# MINUTES

1. **Call to order.** Mayor Tutiakoff called the November 9 regular meeting of the Unalaska City Council to order at 6:23 p.m. following a meeting of Unalaska Crab, Inc.

   Council Member Tungul read the City's Mission Statement.

2. **Roll call.** The City Clerk called the roll.

   Present: Mayor Tutiakoff and Council Members Nicholson (via ZOOM), Looby, Robinson, Tungul and Coleman

   Absent: Council Member Bell (excused).

   The Mayor announced that a quorum was established.

3. **Pledge of Allegiance.** Council Member Tungul led the Pledge of Allegiance.

4. **Recognition of Visitors.** No particular recognitions made.

5. **Approve Minutes of Previous Meeting**. Robinson made a motion to approve the proposed minutes of the October 26, 2021 meeting; Looby seconded; there being no objection, the minutes were adopted by consensus.

6. **Reports**

   a. City Manager: The City Manager presented her report included in the packet, highlighting progress made regarding fiscal sustainability and responded to council questions. Manager notified council of the School District's request for a council member to serve on the school board budget committee. Council Member Looby volunteered; Council Member Tungul volunteered as an alternate. The Manager also gave a local COVID update and indicated the local state of emergency expires at the end of the calendar year.

   b. Financials September 2021: Finance Director Jim Sharpe presented the September 2021 financial reports.

Exhibit A - 1

    c. <u>CARES Act Spending Review</u>: Finance Director Jim Sharpe presented the CARES Act spending recap and responded to council questions.

    d. <u>Status of Power Purchase Agreement with OCCP, LLC</u>: Deputy DPU Director Steve Tompkins presented regarding the status of the agreement with OCCP for the Makushin Geothermal Project and responded to council questions.

7. **Oath of Office.** The City Clerk administered the Oath of Office to DPS Officer Andrew Breda.

8. **Employee Anniversary Awards.** Mayor Tutiakoff recognized two city employee anniversaries:

    a. Nicholai Tutiakoff, 15 years – Dept. of Public Works

    b. Jim Shaishnikoff, 25 years – Dept. of Public Works


MAYOR TUTIAKOFF ANNOUNCED A SHORT BREAK

RECONVENED AT 7:28 P.M.


9. **Adoption of Agenda.** Robinson made a motion to adopt the Agenda; Tungul seconded. There being no objection, motion adopted by consensus.

10. **Community Input & Announcements**. The Mayor provided an opportunity for community input and announcements. PCR Director Blakeley made announcements about PCR programs; Council Member Robinson recognized KUCB for raising $40,000 during a recent fundraiser.

11. **Public Comment on Agenda Items**. Frank Kelty, attending via ZOOM, commented on item 6(b), the September 2021 financial reports.

12. **Work Session**. Tungul made a motion to move into Work Session; Robinson seconded; there being no objection, motion adopted by consensus.

    7:35 p.m. – Entered into Work Session

    a. State Lobbyist Dianne Blumer provided a report regarding the State Legislative Sessions in 2021. Manager Reinders and Blumer discussed with Council the City of Unalaska's State Legislative Priorities.

    Robinson made a motion to reconvene to Regular Session; Tungul seconded; there being no objection, motion adopted by consensus.

    8:30 p.m. – Reconvened to Regular Session

13. **Consent Agenda**

    Coleman requested that Ordinance 2021-17 be removed from the consent agenda to the regular agenda as item 14(b).

    Robinson moved to adopt the remaining items on the Consent Agenda; second by Coleman. Roll call vote: all council members present voted in the affirmative. Motion passed unanimously 5-0

Exhibit A - 2

approving the following items, with public hearings and second readings scheduled for Ordinances 2021-16, 2021-17 and 2021-18 on December 14, 2021. Resolutions 2021-72 and 2021-73 adopted.

    a.  <u>Ordinance 2021-16</u> (1st reading): Creating Budget Amendment #2 to the Fiscal Year 2022 Budget, establishing an E911 Special Revenue Fund with $55,000 of surcharge revenue and appropriating $55,000 for an Enhanced 911 Emergency Reporting System; Accepting $139,000 from Alaska Energy Authority and appropriating $139,000 in the Wind Power Development Project; and recognizing $2,000,000 of private contributions from OCCP LLC and appropriating $2,000,000 in the Makushin Geothermal Project

    b.  <u>Ordinance 2021-18</u> (1st reading): Amending UCO §3.44.060 "Recognized City Holidays" to add Juneteenth National Independence Day as an annual floating holiday beginning calendar year 2022 and make minor descriptive edits

    c.  <u>Resolution 2021-72</u>: Establishing Community Wide COVID-19 Protective Measures

    d.  <u>Resolution 2021-73</u>: Accepting Amendment #1 to the Coronavirus Local Fiscal Recovery Funds Award Agreement

14. **Regular Agenda**

    a.  <u>Resolution 2021-71</u>: Adopting priority rankings for the FY23 - FY32 Capital and Major Maintenance Plan Process Guide

Tungul moved to adopt Resolution 2021-71; second by Nicholson.

Planning Director Bil Homka provided an overview. Council discussion.

Roll call vote. All council members present voted in the affirmative; motion passed unanimously 5-0.

    b.  <u>Ordinance 2021-17</u> (1st reading): Amending Unalaska Code of Ordinances § 13.24.090 Regulating Fireworks

Robinson moved to schedule Ordinance 2021-17 for public hearing and second reading on December 14, 2021; second by Coleman.

Police Chief King provided an overview. Council discussion.

Lobby moved to amend Ordinance 2021-17 to remove the proposed new language in paragraph C; second by Coleman. Council Discussion.

Roll call vote on the proposed amendment: Coleman – yes; Looby – yes; Nicholson – no; Robinson – no; Tungul – no. Motion failed with 2 yes and 3 no votes.

Roll call vote on main motion: Tungul – yes; Lobby – yes; Coleman – no; Nicholson – yes; Robinson – yes. Motion passed 4 yes, 1 no.

15. **Council Directives to City Manager**: None

16. **Community Input & Announcements**: the Mayor announced, barring an emergency, that no City Council meeting will be held on Tuesday, November 23, 2021 due to the Thanksgiving holiday later that week. No other announcements.

Exhibit A - 3

17. **Adjournment**: Having completed all items on the agenda, Mayor Tutiakoff adjourned the meeting at 8:58 p.m.

These minutes were approved by the Unalaska City Council on December 14, 2021.



Marjie Veeder, CMC
City Clerk

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "B"

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION
TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA



## MEMORANDUM

**DATE:** 02/22/24

**TO:** City Manager and City Clerk

**FROM:** 01/24/24 to 02/22/24

**SUBJECT:** Police Department Report

### STAFF REPORT

**The Dillingham Police Department:**

**The Police Department is in need of more patrol vehicles as soon as possible. Our current patrol vehicles are showing signs that it is time to replace them and are beginning to have more problems. We also do not have any spare police vehicles if any of the current vehicles break down. We currently have 5 patrol vehicles needing repair at the city shop. 1 patrol vehicle is completely out of order and is used for parts. 1 patrol vehicle is needing an engine placed in it and put back together. 1 has a missing window which was busted by an individual placed in custody, 1 vehicle has front bearing issues. The last vehicle is undetermined what it needs. This currently leaves us with 5 working police vehicles to share among our current 8 officers. One of the 5 working vehicles is also needing maintenance soon because it is having issues as well. We are in need of new patrol vehicles ASAP.**

<u>The police department would like 2 new snow machines to replace the 2 old snow machines which were sold at the Mayors sale.</u> The City of Dillingham has properties which can only be accessed by off road vehicles such as snow machines and ATVs depending on the time of the year. The snow machines will only be used for special patrol duties and each officer must be trained in operating, minor maintenance, and snow machine trails prior to being allowed to use. Snow machines will not be used for regular patrol duties and must have chief approval prior to use.

-The snow machines will help the police department reach places which patrol vehicles are not able to.

-The snow machines can also be used for search and rescue if needed.

The Police Departments current heating system is having trouble keeping the building warm. We are having to run several space heaters 24_7 to have the building kept somewhat warm in this cold weather. The Police Department building is just old and does not hold heat well. There are also many other issues with the current police building. The building is out dated and needs to be replaced as soon as possible.

**Patrol Department:**

Currently has 9 officers which includes: 8 Patrol Officer and 1 Animal Patrol Officer

---

**City of Dillingham**                                                           **Page 1 of 8**

*Our Vision. To have an infrastructure and city workforce that supports a sustainable, diversified and growing economy. We will partner with others to achieve economic development and other common goals that assure a high quality of living, and excellence in education.*

-5 resident officers, Acting Chief Craig Maines, Officer Aquila Kapotak, Officer David Tanner, Officer James Chillemi, and Animal Officer Cody Hertzberg.

-4 rotating officers which include, Officer Douglas Johnson, Officer Tracy O'Malley, Officer George Head and newest Officer Andrew Breda

-Officer Breda has been on Workman's Comp Medical leave since 02/07/24. It is unclear when he will return to work at the moment.

-We hired a new Officer from Big Lake, AK, Officer Bradley Adams who will be starting on 03/05/24 as a rotational officer. This would give us 5 rotational officers.

-We have listed the New Police Sergeant Positon approved by council in hopes of hiring a resident sergeant give us 2 sergeants for patrol.

-We are still advertising the police officer positions to fill the remaining officer spots. We are mainly look for more resident officers now.

Between 01/24/24 to 02/22/24 the Police Department have received 174 calls for service which included animal calls, medical calls, Traffic calls, Disturbances, Security Checks, Welfare Checks, and Criminal Investigations.

-5 individuals placed in T-47 custody

-8 individuals arrested for criminal investigations/warrants.

-13 criminal investigations

-24 Citations (Criminal/Traffic)


**Dispatch Dept.:**

Currently has 5 Dispatchers, which includes the Supervisor.

-Chelsea Wassily, continues part-time to provide work coverage when needed/available.

-We are advertising for a 6th dispatcher

From 01/24/2024 to 02/22/2024 the Dillingham Police Dispatch has handled 1,125 incoming calls, 84 of those calls were 911 emergency calls. Out the 1,125 calls, 242 of those were calls for service which officers responded.


**Corrections Dept.:**

Jail is open with 4 officers at this time which includes the Corrections Sergeant.

Caleb Kapotak Finished the Corrections Academy in Palmer

We are advertising for 2 Corrections officer positions.


From 01/24/24 thru 02/22/24 there were:

19 inmates held in the Dillingham Jail Facility.

5 individuals under the Alaska Statutes T-47 protective custody.

Total Number of Man-Days Served: 130

*Our Vision. To have an infrastructure and city workforce that supports a sustainable, diversified and growing economy. We will partner with others to achieve economic development and other common goals that assure a high quality of living, and excellence in education.*

Exhibit B - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "C"

**Re:  Andrew Breda; Dillingham Police Department**

**Me**    Me <jerry@steeringlaw.com>
Mon, 16 Dec 2024 3:09:29 PM -0800 •

To    "chiefofpolice" <chiefofpolice@dillinghamak.us>, "Jerry Steering"
<jerry@steeringlaw.com>, "Jerry Steering"
<jerrysteering@yahoo.com>, "gregorypeacockesq"
<gregorypeacockesq@gmail.com>, "greg"
<greg@gregpeacocklaw.com>, "veren.asteeringlaw" <verena.steeringlaw@gmail.com>

Tracy O'Malley
Chief of Police
Dillingham Police Department
141 Main Street
Dillingham, AK 99576

Re:  Andrew Breda

Dear Chief O'Malley:

I am counsel for a man and his children in Southern Caliifornia who is suing the City of Guadalupe, California and former Guadalupe police officer Andrew Breda in the lawsuit of  JOSEPH BERNARDO, and JESSICA GARCIA as guardian ad litem for Minors J.J.B. II and J.J.B. III v. CITY OF Guadalupe; ANDREW BREDA; FRANK MEDINA; CHRISTOPHER OROZCO and DOES 1 through 10, inclusive.

I have attached a copy of the Complaint for Damages and the Summons on the lawsuit, along with Fed. Rule of Civil Proc. 4 Waiver of Service of Summons and an Acknowledgement of Service form for Mr. Breda.

I am informed that Andrew Breda has moved to Alaska and is employed as a police officer with the Dillingham Police Department.

If you would be so kind, can you please have someone forward the attached documents to Officer Breda or please have him or a lawyer on his behalf contact me at the contact information shown below.

Thank you for your indulgence in this matter.

Exhibit C - 1

**Jerry L. Steering, Esq.**
**LAW OFFICE OF JERRY L. STEERING**
4063 Birch Street, Suite 100
Newport Beach, CA 92660
(949) 474-1849 Office
(949) 292-7825 Cell
Email:  jerry@steeringlaw.com
Website:  www.steeringlaw.com



 **3 Attachment(s)** • Download as Zip

DOC 1 - Complaint.pdf
214.1 KB •

DOC 12 - Issued Summons.pdf
238.8 KB •

BERNARDO, JOSEPH - WAI…  .pdf
2.1 MB •

Exhibit C - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "D"



**jerry**< jerry@steeringlaw.com >

**RE: Contact information for Attorney Jerry L. Steering**

**Amy Stanford** < astanford@ci.unalaska.ak.us >          Thu, 19 Dec 2024 12:46:38 PM -0800

To    "jerrysteering"<jerry@steeringlaw.com>
Cc    "Marjorie Veeder"<mveeder@ci.unalaska.ak.us>

Hi Jerry,

Thank you for the conversation on Monday.

Regarding Andrew Breda, we have nothing new to add to what we confirmed when speaking with you - Andrew Breda is not an employee of the City of Unalaska and he does not live in Unalaska.

Kind regards,

**Amy Stanford, SPHR/SHRM-SCP**
Human Resources Manager
City of Unalaska
Phone: 907.581.1251, extension 1302
Mobile: 907.359.7920
Fax: 907.581.4469

**From:** jerrysteering <jerry@steeringlaw.com>
**Sent:** Monday, December 16, 2024 9:49 AM
**To:** Amy Stanford <astanford@ci.unalaska.ak.us>; gregorypeacockesq <gregorypeacockesq@gmail.com>; greg <greg@gregpeacocklaw.com>; Jerry Steering <jerry@steeringlaw.com>; Jerry Steering <jerrysteering@yahoo.com>
**Subject:** Contact information for Attorney Jerry L. Steering

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Unalaska Courts

Unalaska Court Directory - Alaska Court System

Exhibit D - 1

**Jerry L. Steering, Esq.**
**LAW OFFICE OF JERRY L. STEERING**
4063 Birch Street, Suite 100
Newport Beach, CA 92660
(949) 474-1849 Office
(949) 292-7825 Cell
Email:  jerry@steeringlaw.com
Website:  www.steeringlaw.com



Exhibit D - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "E"

# COMPREHENSIVE REPORT
## MR ANDREW NOEL BREDA

### REPORT CRITERIA

Name: ANDREW NOEL BREDA
Person ID: 194280177260
Reference Code:

GLBA: Fraud Prevention or Detection
DPPA: Use in the Normal Course of Business

### REPORT SUMMARY

| Subject Information | Indicators | |
|---|---|---|
| (Best Information for Subject) | Bankruptcy: | **Yes** |
| **MR ANDREW NOEL BREDA** (Male) | Deceased: | No |
| 619-94-#### | | |
| 12/##/1996 (Age 28) | | |

**Report Legend**

🔵 Shared Address
🟢 Verified Address
⊖ Deceased
⚠ High Risk Indicator

| Associated Addresses |
|---|
| **6 Address Record(s) found:** |

| | |
|---|---|
| 2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES 🟢 | (Jan 2013 - Jan 2025) |
| 1700 21ST AVE S, SEATTLE, WA 98144-4500 KING | (Sep 2024 - Oct 2024) |
| 18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST | (Mar 2022 - Mar 2022) |
| 2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES | (May 2018 - Jun 2018) |
| PO BOX 502, UNALASKA, AK 99685-0502 ALEUTIANS WEST | (Oct 2022 - Oct 2022) |
| PO BOX 18, UNALASKA, AK 99685-0018 ALEUTIANS WEST | (Oct 2022 - Oct 2022) |

**Record Counts**

| | |
|---|---|
| Aliases | 5 |
| Imposters | 2 |
| Associates | 0 |
| Relatives (1st Degree) | 4 |
| Student Information | 0 |
| Student Records | 0 |
| Addresses | 6 |
| Property Records | 0 |
| Phone Records | 4 |
| Email Addresses | 0 |
| Neighbors | 4 |
| Historical Neighbors | 4 |
| Drivers Licenses | 0 |
| Motor Vehicle Registrations | 0 |
| Watercraft Records | 0 |
| Aircraft Registrations | 0 |
| Bankruptcies | 1 |
| Liens and Judgments | 0 |
| Criminal & Traffic Records | 0 |
| Sexual Offenses | 0 |
| Foreclosures | 0 |
| Notices of Defaults | 0 |
| Civil Court Records | 0 |
| Corporate Affiliations | 0 |
| UCC Filings | 0 |
| People at Work | 0 |
| FAA Certifications | 0 |
| Professional Licenses | 3 |
| DEA Controlled Substance Licenses | 0 |
| Voter Registrations | 0 |
| Hunting/Fishing Licenses | 0 |
| Weapon Permits | 0 |
| Firearms/Explosives Licenses | 0 |

| Associated Phone Numbers Summary |
|---|
| **4 Phone(s) found:** |

(323) 717-8682 ⭐⭐⭐⭐⭐ (Phones Plus) (05/01/2023 - 09/01/2024 ) (ANDREW N BREDA )
(323) 717-5682 ⭐⭐⭐⭐⭐ (Phones Plus) (10/04/2024 - 10/04/2024 ) (ANDREW NOEL BREDA )
(323) 643-4385 ⭐⭐⭐⭐ (Phones Plus) (06/30/2024 - 01/28/2025) (ANTHONY E BREDA )
(323) 734-9378 ⭐ (Phones Plus) (ANDREW BREDA )

| Criminal & Traffic Records Summary |
|---|
| NONE FOUND |

| Vehicle Summary |
|---|
| NONE FOUND |

| People at Work Summary |
|---|
| NONE FOUND |

| Drivers Licenses |
|---|
| NONE FOUND |

| Bankruptcy Record(s) found: |
|---|
| **1 Bankruptcy Record(s) found:** |
| INDIVIDUAL Bankruptcy, Chapter 7, Filed 12/22/2018 |

Exhibit E - 1

ERNEST J BREDA - 1/1940 (85) - 566-52-#### issued in California between 01/01/1956 and 12/31/1956
ERNEST MYTRIS BREDA - 01/##/1940 (85) - 433-58-#### issued in Louisiana between 01/01/1956 and 12/31/1957

### Addresses

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 3216 BELWOOD ST ALEXANDRIA, LA 71301-3507 RAPIDES (Jun 2006 - Jan 2025) ✅ | ERNEST BREDA - 01/##/1940 (85) - 433-58-#### MYRTIS J BREDA - 09/##/1938 (86) - 433-60-#### FRANCIS WASHINGTOM JONES - 06/##/1948 (76) - 439-80-#### LAWRENCE E J JONES - 01/##/1940 (85) - 435-56-#### ERNEST BREDA JAZMEN DANYELLE GLADNEY - 09/##/1992 (32) - 436-85-#### FRANCES JONES | (318) 445-4887 (CST) - Residential (318) 487-0469 (CST) - Residential |
| 2 | 2940 WEST BLVD APT LOS ANGELES, CA 90016-3631 LOS ANGELES (Feb 1969 - Jan 2023) 🅱 | RONALD BERNARD BREDA - 07/##/1959 (65) - 570-19-#### ERMA JEAN BREDA - 09/##/1939 (85) - 566-52-#### ANTHONY ERNEST BREDA - 01/##/1963 (62) - 570-19-#### SONIA PINEDA - 02/##/1974 (50) - 545-89-#### ANDREW NOEL BREDA - 12/##/1996 (28) - 619-94-#### | (323) 731-4686 |
| 3 | 1940 WEST BLVD LOS ANGELES, CA 90016-1720 LOS ANGELES (Jan 2003 - Apr 2004) | DONALD S LANGWORTHY - 03/##/1960 (64) - 566-29-#### FAITH C MINA - 11/##/1980 (44) - 496-84-#### ANDREW MINA - 11/##/1982 (42) - 494-86-#### DANIEL ALEXANDER BONNEY - 06/##/1976 (48) - 889-99-#### SIMONE LACCERINI - 07/##/1976 (48) | (323) 641-0945 (PST) - Residential |
| 4 | 1526 S SHERBOURNE DR APT 3 LOS ANGELES, CA 90035-4443 LOS ANGELES (Sep 2001 - Oct 2001) | EVAN SCOTT SCHWARTZ - 11/##/1979 (45) - 056-74-#### PARISA GHEITANCHI - 11/##/1984 (40) - 622-32-#### | |
| 5 | 20213 CAMPAIGN DR CARSON, CA 90746-3015 LOS ANGELES (Oct 2000 - Jun 2001) | MARIO JOSEPH BREDA - 11/##/1961 (63) - 570-19-#### DONALD HASTY - 06/##/1953 (71) - 557-06-#### GABRIELLE JOY BREDA - 03/##/1987 (37) - 558-99-#### DILLON C HASTY - 10/##/1989 (35) - 606-40-#### BRANDON N HASTY - 08/##/1991 (33) - 619-60-#### GARRETT J BREDA - 1990 (35) - 613-46-#### | |
| 6 | 3633 1/2 S VICTORIA AVE LOS ANGELES, CA 90016-4852 LOS ANGELES (Dec 1993 - Dec 1993) | | |
| 7 | 353 S CLOVERDALE AVE APT 12 LOS ANGELES, CA 90036-3426 LOS ANGELES (Jan 1988 - Dec 1992) | | 734-9378 |
| 8 | 2824 HILLCREST DR LOS ANGELES, CA 90016-2958 LOS ANGELES (Apr 1984 - Apr 1984) | KINGSLEY PETER OLLAWA - 12/##/1950 (74) - 614-52-#### GLORIA C EZEAGWULA - 08/##/1970 (54) - 618-47-#### | |
| 9 | 3633 S VICTORIA AVE LOS ANGELES, CA 90016-4852 LOS ANGELES | AMBER N LEE - 10/##/1975 (49) - 615-05-#### WILLIAM SHANNON LEE - 08/##/1937 (87) - 429-58-#### | 734-9378 |

## Associates (None Found)

NO RECORDS

## Neighbors (4 Found)

4 Neighbor Record(s) found:
2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES (Jan 2013 - Nov 2024) ✅
1700 21ST AVE S, SEATTLE, WA 98144-4500 KING (Sep 2024 - Oct 2024)
18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST (Mar 2022 - Mar 2022)
2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES (May 2018 - Jun 2018)

**2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES** ✅      2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES
Dates Seen: 01/2013 - 11/2024

**Residents**

| |
|---|
| RONALD BERNARD BREDA - 07/##/1959 (65) - 570-19-#### |
| ERMA JEAN BREDA - 09/##/1939 (85) - 566-52-#### |
| ANTHONY ERNEST BREDA - 01/##/1963 (62) - 570-19-#### |
| SONIA PINEDA - 02/##/1974 (50) - 545-89-#### |
| ANDREW NOEL BREDA - 12/##/1996 (28) - 619-94-#### |

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 2941 WEST BLVD<br>LOS ANGELES, CA 90016-3630 LOS ANGELES (Nov 1978 - Nov 2024) | JUANITA BIGBEE - 08/##/1923 (101) - 553-24-####<br>JAMES WILLIAM BIGBEE 3 - 04/##/1952 (72) - 573-88-####<br>SHIRLEY KEIKO OSHIMA - 03/##/1952 (72) - 558-74-####<br>FRED L BIGBEE SR - 565-96-####<br>CHIYOKO S OSHIMA - 10/##/1918 (106) - 522-38-#### | (323) 733-4297<br>(PST) - Residential |
| 2 | 2938 WEST BLVD APT 6<br>LOS ANGELES, CA 90016-3631 LOS ANGELES (Jun 2024 - Nov 2024) | MARIA E LUGO - 572-17-#### | |

---

**1700 21ST AVE S, SEATTLE, WA 98144-4500 KING**
Dates Seen: 09/2024 - 10/2024

1700 21ST AVE S, SEATTLE, WA 98144-4500 KING

**Residents**

| |
|---|
| DAVID WAYNE LING - 10/##/1960 (64) - 502-88-#### |
| DEAN L SWERDFEGER - 02/##/1914 (110) - 536-42-#### |
| HERBIE J DESROULEAUX - 10/##/1999 (25) - 594-87-#### |
| JEFF DAN KING - 11/##/1984 (40) - 536-02-#### |
| AARON MAXWELL THOMPSON - 02/##/1987 (37) - 536-19-#### |
| SARAH E UDELHOFEN - 04/##/1992 (32) - 319-88-#### |
| KA FAI LAM - 11/##/1991 (33) - 772-96-#### |
| MACERIO DELON CLARK - 11/##/1993 (31) - 535-29-#### |
| TYLER M JOY - 07/##/1994 (30) - 534-31-#### |
| TIANNING ZHANG - 03/##/1991 (33) - 013-47-#### |
| ANDREW NOEL BREDA - 12/##/1996 (28) - 619-94-#### |
| THEODORE EDWARD GRAHAM - 11/##/2000 (24) - 610-23-#### |

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 1700 21ST AVE S STE 102<br>SEATTLE, WA 98144-4500 KING (Aug 2024 - Nov 2024) | KA FAI LAM - 11/##/1991 (33) - 772-96-#### | |
| 2 | 1700 21ST AVE S STE 206<br>SEATTLE, WA 98144-4500 KING (May 2023 - Nov 2024) | THEODORE EDWARD GRAHAM - 11/##/2000 (24) - 610-23-#### | |
| 3 | 1700 21ST AVE S APT 301<br>SEATTLE, WA 98144-4500 KING (Aug 2024 - Nov 2024) | TALIYAH S EMORY MUHAMMAD - 218-59-#### | |

---

**18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST**
Dates Seen: 03/2022 - 03/2022

18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 67 PTARMIGAN<br>UNALASKA, AK 99685 ALEUTIANS WEST (Mar 2024 - Nov 2024) | CHARISE SAN LUIS<br>SILVERIO R PORTILLO - 05/##/1978 (46) - 619-01-####<br>DULMA CAROLINA GRANADOS - 05/##/1982 (42) - 624-78-#### | |

---

**2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES**
Dates Seen: 05/2018 - 06/2018

2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES

**Residents**

| |
|---|
| SHEILA T BREDA - 03/##/1963 (61) - 560-17-#### |
| RONALD DAVID MOORE - 9/1957 (67) - 572-17-#### |

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 2837 S BRONSON AVE APT 3<br>LOS ANGELES, CA 90018-2857 LOS ANGELES (Apr 2021 - Oct 2024) | KEVIN DAVIS - 07/##/1961 (63) - 355-64-#### | |
| 2 | 2837 S BRONSON AVE APT 2<br>LOS ANGELES, CA 90018-2857 LOS ANGELES (Jan 2000 - Nov 2024) | LAURA E NEAL - 02/##/1956 (68) - 553-17-#### | |

---

# Weapon Permits (None Found)

NO RECORDS

# DEA Controlled Substance Licenses (None Found)

NO RECORDS

## Historical Neighbors (4 Found)

**4 Historical Neighbor Record(s) found:**

2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES (Jan 2013 - Nov 2024) ✓
18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST (Mar 2022 - Mar 2022)
1700 21ST AVE S, SEATTLE, WA 98144-4500 KING (Sep 2024 - Oct 2024)
2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES (May 2018 - Jun 2018)

---

**2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES** ✓
Dates Seen: 01/2013 - 11/2024

**2940 WEST BLVD APT, LOS ANGELES, CA 90016-3631 LOS ANGELES**

**Residents**

RONALD BERNARD BREDA - 07/##/1959 (65) - 570-19-####
ERMA JEAN BREDA - 09/##/1939 (85) - 566-52-####
ANTHONY ERNEST BREDA - 01/##/1963 (62) - 570-19-####
SONIA PINEDA - 02/##/1974 (50) - 545-89-####
ANDREW NOEL BREDA - 12/##/1996 (28) - 619-94-####

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 2939 WEST BLVD LOS ANGELES, CA 90016-3630 LOS ANGELES (Jan 1983 - Jan 2023) | JOYCE M TEELE - 559-04-#### JACQUELINE VANDERBILT - 01/##/1958 (67) - 570-78-#### | |
| 2 | 2941 WEST BLVD LOS ANGELES, CA 90016-3630 LOS ANGELES (Nov 1978 - Nov 2024) | JUANITA BIGBEE - 08/##/1923 (101) - 553-24-#### JAMES WILLIAM BIGBEE 3 - 04/##/1952 (72) - 573-88-#### SHIRLEY KEIKO OSHIMA - 03/##/1952 (72) - 558-74-#### FRED L BIGBEE SR - 565-96-#### CHIYOKO S OSHIMA - 10/##/1918 (106) - 522-38-#### | (323) 733-4297 (PST) - Residential |
| 3 | 2941 WEST BLVD LOS ANGE LOS ANGELES, CA 90016-3630 LOS ANGELES (Jan 1983 - Sep 2024) | FRED LANDIN BIGBEE JR - 11/##/1953 (71) - 565-96-#### | |

---

**18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST**
Dates Seen: 03/2022 - 03/2022

**18 PTARMIGAN APT D, UNALASKA, AK 99685 ALEUTIANS WEST**

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 87 PTARMIGAN UNALASKA, AK 99685 ALEUTIANS WEST (Aug 2021 - Apr 2022) | KAI A LLOYD - 516-39-#### KEITH B THOMPSON RUTH THOMPSON | |

---

**1700 21ST AVE S, SEATTLE, WA 98144-4500 KING**
Dates Seen: 09/2024 - 10/2024

**1700 21ST AVE S, SEATTLE, WA 98144-4500 KING**

**Residents**

DAVID WAYNE LING - 10/##/1960 (64) - 502-88-####
DEAN L SWERDFEGER - 02/##/1914 (110) - 536-42-####
HERBIE J DESROULEAUX - 10/##/1999 (25) - 594-87-####
JEFF DAN KING - 11/##/1984 (40) - 536-02-####
AARON MAXWELL THOMPSON - 02/##/1987 (37) - 536-19-####
SARAH E UDELHOFEN - 04/##/1992 (32) - 319-88-####
KA FAI LAM - 11/##/1991 (33) - 772-96-####
MACERIO DELON CLARK - 11/##/1993 (31) - 535-29-####
TYLER M JOY - 07/##/1994 (30) - 534-31-####
TIANNING ZHANG - 03/##/1991 (33) - 013-47-####
ANDREW NOEL BREDA - 12/##/1996 (28) - 619-94-####
THEODORE EDWARD GRAHAM - 11/##/2000 (24) - 610-23-####

**Addresses**

| | Address | Residents | Phones |
|---|---|---|---|
| 1 | 1700 21ST AVE S STE 102 SEATTLE, WA 98144-4500 KING (Aug 2024 - Nov 2024) | KA FAI LAM - 11/##/1991 (33) - 772-96-#### | |
| 2 | 1700 21ST AVE S STE 206 SEATTLE, WA 98144-4500 KING (May 2023 - Nov 2024) | THEODORE EDWARD GRAHAM - 11/##/2000 (24) - 610-23-#### | |
| 3 | 1700 21ST AVE S APT 301 SEATTLE, WA 98144-4500 KING (Aug 2024 - Nov 2024) | TALIYAH S EMORY MUHAMMAD - 218-59-#### | |

---

**2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES**
Dates Seen: 05/2018 - 06/2018

**2837 S BRONSON AVE APT 5, LOS ANGELES, CA 90018-2857 LOS ANGELES**

**Residents**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "F"

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/17/2024 4:12 PM
By: Terri Chavez , Deputy

1
2
3
4
5
6
7

Louis V. Kosnett, Esq. (SBN: 299421)
louiskosnett@kosnettlaw.com
Dan B. Yakobian, Esq. (SBN: 299384)
danyakobian@kosnettlaw.com
KOSNETT LAW FIRM
11400 W. Olympic Boulevard, Suite 200
Los Angeles, California 90064
Phone: (310) 445-5900

Attorneys for Plaintiff,
ANDREW BREDA

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## FOR THE COUNTY OF SANTA BARBARA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ANDREW BREDA, an individual, | CASE NO.: 24CV07129 |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. **DISCRIMINATION** [Gov. Code, §§ 12940, *et seq.*]; |
| CITY OF GUADALUPE, a public entity; CITY OF GUADALUPE POLICE DEPARTMENT, a public entity; and DOES 1 through 50, inclusive, | 2. **RETALIATION** [Gov. Code, § 12940(h)]; |
| Defendants. | 3. **FAILURE TO MAKE REASONABLE ACCOMMODATIONS** [Gov. Code, § 12940(a) & (m)]; |
| | 4. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS** [Gov. Code, § 12940(n)]; |

5. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION** [Gov. Code, § 12940(j) & (k)];

6. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

7. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** [Gov. Code, §§ 12940, *et seq.*]

8. **RETALIATION** [Labor Code, § 1102.5];

9. **VIOLATION OF CALIFORNIA WHISTLEBLOWER PROTECTION ACT** [Gov. Code, § 8547, *et seq.*].

**JURY TRIAL DEMANDED**

Exhibit F - 1

Plaintiff ANDREW BREDA (hereinafter, "*Plaintiff*"), brings his Complaint and alleges:

## GENERAL ALLEGATIONS

1.    This is an action for violation of California's laws concerning employer discrimination, retaliation, and wrongful termination.  Plaintiff alleges that Defendants, CITY OF GUADALUPE, and CITY OF GUADALUPE POLICE DEPARTMENT (collectively, "*Defendants*"), by and through their, officers, directors, employees, members and managing agents, and alter egos, and DOES 1 Through 50, inclusive: (1) discriminated against Plaintiff due to his disability and medical condition; (2) retaliated against Plaintiff (in violation of Gov. Code, §12940(h)]); (3) failed to accommodate Plaintiff due to his disability; (4) failed to engage in any Interactive Process with Plaintiff concerning his disability; (5) failed to prevent discrimination and retaliation against Plaintiff; (6) took actions to intentionally inflict emotional distress upon Plaintiff; (7) wrongfully terminated Plaintiff's employment in violation of public policy; (8) retaliated against Plaintiff (in violation of Labor Code, § 1102.5); and (9) violated the California Whistleblower Protection Act.

2.    Defendants violated the provisions of the California Fair Employment and Housing Act ("*FEHA*"), including but not limited to California Government Code, the California Labor Code and other relevant laws, rules orders, requirements and regulations.

3.    All of these claims are the result of the intentional conduct of the Defendants and their blatant disregard for the laws of the state of California.  Accordingly, this civil action seeks compensatory and punitive damages against Defendants for violations of Plaintiff's rights as set forth herein.

## JURISDICTION AND VENUE

4.    The Court has jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10, which grants the superior court "original jurisdiction in all other causes" except those given by statute to other courts.  The statutes under which this action is brought do not specify any other basis for jurisdiction.

5. This Court has jurisdiction over Defendants, because, upon information and belief, said defendants have sufficient minimum contacts in California, or otherwise intentionally avails itself to the

- 2 -
COMPLAINT

Exhibit F - 2

California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

6. Venue is proper in this Court because, upon information and belief, Defendants maintain offices, have agents, and/or transact business in the State of California, County of Santa Barbara. Plaintiff resides in the State of California and the majority of the acts and omissions alleged herein relating to Plaintiff took place in the State of California, County of Santa Barbara.

**THE PARTIES**

7.      Plaintiff ANDREW BREDA is an adult competent to sue.  At all relevant times Plaintiff was employed by Defendant CITY OF GUADALUPE through Defendant CITY OF GUADALUPE POLICE DEPARTMENT.

8.      Defendant CITY OF GUADALUPE is and was, at all times relevant hereto, a public entity, duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued.  At all times relevant to the facts alleged herein, Defendant CITY OF GUADALUPE was and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies.

9.      Defendant CITY OF GUADALUPE POLICE DEPARTMENT is a subdivision and department of Defendant CITY OF GUADALUPE and employed Plaintiff.  At all times relevant to the facts alleged herein, Defendant CITY OF GUADALUPE was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including Defendant CITY OF GUADALUPE POLICE DEPARTMENT'S employees, complied with the laws and the Constitutions of the United States and of the State of California.

10.      Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the facts alleged herein, Defendant CITY OF GUADALUPE possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of Defendant CITY OF GUADALUPE POLICE DEPARTMENT.  At all times relevant to the facts alleged herein, Defendant CITY OF GUADALUPE was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including Defendant CITY OF

GUADALUPE POLICE DEPARTMENT employees and agents, complied with the laws and the Constitutions of the United States and of the State of California.

11.    At all times relevant to this Complaint, Plaintiff was an employee of Defendants. Defendants both directly and indirectly employed Plaintiff, as defined under the Fair Employment and Housing Act at Gov. Code, § 12926(d).

12.    Plaintiff is informed and believes that Defendants are an "employer" as defined by Gov. Code, §§ 12926(d), and 12940(a).

13.    Plaintiff is informed and believes and based thereon alleges that Defendants are subject to suit under FEHA, Gov. Code, §12900, *et seq*., because they regularly employ five (5) or more persons.

14.    *Doe defendants*: Plaintiff is ignorant of the identities of defendants Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.  The Doe defendants may be individuals, public entities, partnerships, or corporations.

15.    At all relevant times, each of DOES 1 through 50 were employees of the Defendant CITY OF GUADALUPE, working as a member of Defendant CITY OF GUADALUPE POLICE DEPARTMENT.  At all times relevant herein, each DOE Defendant named in the present action, 1 through 50, was an employee and/or agent of Defendants. At all times relevant herein, each DOE Defendant named in the present action, 1 through 50, was an employee and/or agent of Defendants CITY OF GUADALUPE and/or the CITY OF GUADALUPE POLICE DEPARTMENT and they acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendants CITY OF GUADALUPE and CITY OF GUADALUPE POLICE DEPARTMENT, as well as under the color of the statutes and regulations of the State of California.

16.    At all relevant times, each of the Defendants DOES 1 through 50 were acting within his or her capacity as an employee, agent, representative and/or servant of Defendants CITY OF GUADALUPE and/or the CITY OF GUADALUPE POLICE DEPARTMENT and is sued in their individual capacities.

17.    The true names of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names.  Plaintiffs will seek leave to

amend this Complaint to show the true names and capacities of these Defendants when they have

been ascertained.  Each of the fictitiously named Defendants is responsible in some manner for the

conduct and liabilities alleged herein.

18.     Defendants DOES 1 through 50 were officers, sergeants, captains, chiefs and/or

policymakers for the CITY OF GUADALUPE and/or the CITY OF GUADALUPE POLICE

DEPARTMENT'S departments and subdivisions of Defendant CITY OF GUADALUPE.  At all

times mentioned herein said DOE Defendants were employees, representatives and/or agents of

Defendants CITY OF GUADALUPE and the CITY OF GUADALUPE POLICE DEPARTMENT.

Said Defendants, at all times relevant, were acting in the course and scope of their employment and

agency with Defendant CITY OF GUADALUPE, which is liable under the doctrine of respondeat

superior pursuant to <u>California Government Code</u>, § 815.2.

19.     Each of the above Defendants caused and is responsible for the unlawful conduct

and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert

with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful

conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred;

by failing and refusing, with deliberate indifference to Plaintiffs' rights, to initiate and maintain

adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents

and peace officers under their direction and control.  Whenever and wherever reference is made in

this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to

mean the acts and failures to act of each Defendant individually, jointly and severally.  They are

sued in their individual and official capacities and in some manner are responsible for the acts and

omissions alleged herein.  Plaintiffs will ask leave of this Court to amend this Complaint to allege

such name and responsibility when that information is ascertained.  Each of the Defendants is the

agent of the other.

20.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned

herein, each of the Doe defendants was the parent, subsidiary, agent, servant, employee, joint

employer, co-venturer, and/or co-conspirator of each of the other defendants and was at all times

mentioned, acting within the scope, purpose, consent, knowledge, ratification and authorization of

such agency, employment, joint venture and conspiracy.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by its conduct.  Doe Defendants 1 through 50 are herein collectively referred to as "***DOES***."

21.     *Relationship of Defendants:*  Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Defendants and DOES were the agent, principal, employee, employer, representative, joint venturer, co-conspirator, parent corporation, joint employers, and/or alter ego, of each of the other Defendants and DOES, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendant and DOES.

22.     Defendants and DOES were responsible for the events and damages alleged herein, including on the following bases: (a) they committed the acts alleged; (b) at all relevant times, one or more of the Defendant and DOES were the agent or employee, and/or acted under the control or supervision of, one or more of the remaining Defendant and DOES and, in doing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between two or more of the Defendant and DOES such that any individuality and separateness between has ceased, and are the alter egos of one another.  Defendants and DOES exercised domination and control over one another to such an extent that any individuality or separateness does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of the Defendant and DOES would permit abuse of the corporate privilege and would sanction fraud and promote injustice.  All actions of all Defendant and DOES were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants and DOES, were taken on behalf of all Defendant and DOES, and were engaged in, authorized, ratified, and approved of by all other Defendant and DOES.

23.     Defendants had actual and constructive notice of the wrongful conduct;

Exhibit F - 6

1  discrimination and retaliation perpetrated upon Plaintiff, and as set forth below, had both the

2  authority and the duty to prevent and correct the same, failed to take reasonable action to prevent

3  and correct the same and, by their conduct, condoned, supported and ratified such wrongful conduct.

4          24.      In addition, Defendants compelled, coerced, aided, and abetted the discrimination,

5  which is prohibited under Gov. Code, section 12940(i).

6                                      **STATEMENT OF FACTS**

7          25.      On or about March 22, 2023, Defendants hired Plaintiff as a Lateral Police Officer.

8  Upon hire, Plaintiff was told by his superiors, Lieutenant Limon and Sergeant Medina, that he was

9  going to do a four-week training program since he already possessed an active Peace Officer

10  Standards and Training (POST) certificate.

11          26.      During Plaintiff's initial four-week training period, there was an approximately 800-

12  page Police Officer Orientation Binder that contained various training bulletins and information

13  regarding agency standard operating procedures and other relevant new hire police training material.

14  This binder is mandated by CA POST Commission and is subject to inspection and review by CA

15  POST regulators.

16          27.      Throughout Plaintiff's employment, he had a total of four 800-page binders.  For

17  reasons still unknown to this day, the binders which contained all of Plaintiff's official training

18  records went missing.  Without these binders and training records, Officers are unable to complete

19  the training program unless the binder is completely signed and dated by the Officer in training and

20  his/her trainer for that specified period.  Since all of Plaintiff's records were missing or incomplete,

21  he never completed the training program despite being employed by Defendants for nearly nine

22  months.

23          28.      On various occasions, Plaintiff was instructed by Lt. Limon and/or Officer

24  Kuhbander, to "fill out the binder and back date everything to make it appear as though they

25  properly discussed the training and signed off on it.

26          29.      When Plaintiff raised his concerns about the training program and missing records,

27  he was always reassured that he was progressing properly through the training program and that he

28  had nothing to worry about.  On at least five occasions, Lt. Limon, Sgt. Medina, and Officer

COMPLAINT

Exhibit F - 7

Kuhbander conducted meetings about Plaintiff's training progress.  Based on what Plaintiff was told by Sgt. Medina and Officer Kuhbander, he would have been off training if the agency could locate the missing binders which contained all his training records.

30.     Plaintiff also made repeated verbal inquiries on a weekly basis to Command Staff about when his training would be completed.  In response, they would each point the finger at the other.  Officer Kuhbander, the Union Representative, also made several inquiries to Lt. Limon about Plaintiff's training.  In response, Lt. Limon would point the finger back at FTO Omar and Sgt. Medina.  Accordingly, no one provided Plaintiff with an accurate answer or timeline even after repeated inquiries.

31.     Plaintiff was subjected to an unusually long field training program that other officers were not subjected to.  After four weeks, Plaintiff inquired why he was still in training.  In response, Plaintiff's superior, Lt. Limon said that the Chief of Police, Michael Cash, was having Plaintiff go through a 16-week training program since he was from out of state.  During this time, Officer Ramirez (also a Lateral Officer) completed his four-week training program and was signed off to work on his own.

32.     On or about June 19, 2023, Plaintiff was injured during the scope and course of his employment, while apprehending a suspect.  At the time of Plaintiff's injury, he had four weeks remaining to complete the 16-week training program.  Specifically, Plaintiff suffered from Right Shoulder Strain and Right Shoulder Pain.  Accordingly, Plaintiff's physician placed him on modified duties and requested accommodations from Defendants.

33.     Following Plaintiff's injury, he was initially placed on an eight-week medical leave of absence and on or about August 21, 2023, he was allowed to return to work with modified/light duties.  Nevertheless, Defendants failed to engage in the Interactive Process with Plaintiff, and failed to accommodate Plaintiff by placing him on modified/light duties, as requested by his physician.  Specifically, Plaintiff was required to work on police patrol (field operations).  This consisted of writing citations, making physical custodial arrest, and similar full fledge police officer duties.  Essentially, Plaintiff was never placed on light-duties as he always continued to do work in field operation and conducting full police enforcement actions with the Chief

34.     On one occasion, Sgt. Medina sympathized with Plaintiff and told him the following: "it's bullshit that the agency is forcing you to work. You're injured and not healed, and the Chief is completely disregarding your medical physical limitations, I'm sorry Andrew that's really unfair to you, and the department as a whole has been unfair to you."

35.     Finally, while Plaintiff was supposed to be in light duties, Chief Cash did not complete a single Daily Observation Report (DOR), even though Plaintiff was working in Field Operations along with the Chief, in violation of his work restrictions. Accordingly, Plaintiff's field performance was not being accounted for, and by failing to generate the daily DOR logs that are required to complete the training program, Defendants further delayed Plaintiff's completion of the training program, which denied Plaintiff work opportunities and assignments as well as a promotion.

36.     When Plaintiff asked Chief Cash whether the time he was working in Field Operations was being accounted for (for the purpose of his training), Chief Cash became upset and said, "it may or may not count, I haven't decided yet." Evern though Plaintiff also worked with Sgt. Medina, FTO Miller, and Lt. Limon on numerous occasions, none of them had completed a single DOR to account for the time worked, and they failed to provide Plaintiff with any DORs for his review and signature, as required by POST regulations.

37.     In addition, Plaintiff was told by several Officers and Sgt. Medina that the Department and the Officers are upset with him for being out on leave. Chief Cash forced Plaintiff to work in his full duty capacity in uniform and without accommodations while he was injured.

38.     In early September 2023, Plaintiff asked Chief Cash on at least two separate occasions if he could go back on medical leave, or alternatively, to remain at the station in plain clothes because working the field and carrying and lifting the heavy-duty belt was causing Plaintiff excruciating pain. In addition, wearing the restrictive bullet proof vest and other police clothing restricted Plaintiff's mobility and exacerbated his shoulder pain.

39.     In response, Chief Cash told Plaintiff that he needed to come to work and perform. In addition, Chief Cash told Plaintiff, "If you don't come to work, we'll just replace you and get someone else to do it. You need to be here at work, If I can work with injuries so can you or anybody else."

40.     In another conversation, when Plaintiff told Chief Cash about his continued pain, Chief Cash responded, "If you go off again, you're going to be replaced and we'll just be done with you and forget about you. You're on probation remember that."

41.     During the same time, Plaintiff was routinely tasked with physically assisting the Chief with loading his personal horse equipment on and off the Guadalupe Police Vehicle and his personal vehicle, in violation of his accommodations.

42.     In addition, Lt. Limon told Plaintiff to "take a bunch of Ibuprofen and Norcos and to come to work and not complain."

43.     Officer Kuhbander made similar comments as well and continued to say that Plaintiff's coworkers were upset with him for getting injured and that he has become a burden to the police agency operations.

44.     While Plaintiff was supposed to be on light duties, Chief Cash assigned him the task of conducting a full-scale audit and investigation of the Department by writing a letter outlining his concerns about the Department, what needs improving, and Plaintiff's recommendations. Accordingly, on or about August 29, 2023, Plaintiff submitted his letter to the Chief, in which he raised concerns about Police Officer salaries, the hiring and vetting process, the Department's cars and equipment, and the Office Environment/Station Set up and Equipment.  When Chief Cash read the letter, he became upset and said, "this is nothing more than a bunch of complaints and problems." Chief Cash then told Plaintiff that the reason for having him write the letter was because he wanted to see his writing style and give him something to do.

45.     Even though the letter was only submitted to Chief Cash, in the following days, Plaintiff's fellow Officers told him they heard about the letter, and that Chief told them everything. This created a hostile work environment as other Officers were now pressuring Plaintiff to resign and said they did not know if they could trust Plaintiff.

46.     On or about September 22, 2023, Plaintiff was approved to return to his full duties at work without accommodations.  Accordingly, he was sent back to Field Training with Sgt. Medina, who advised Plaintiff that he was back to Phase 1 and that his training was reset at the request of Chief Cash and Lt. Limon.  When Plaintiff asked for an explanation, none was given.

COMPLAINT

Exhibit F - 10

Accordingly, Plaintiff was denied work opportunities and/or assignments, in addition to a promotion, because of his disability and in retaliation for requesting and/using disability-related accommodations, and because of the audit letter he wrote.

47.    On or about September 27, 2023, during a traffic stop, Plaintiff used a taser on a suspect. As a result, a Use of Force report should have been promptly completed by a supervisor. Nevertheless, a Use of Force Report was never completed, which Plaintiff did not discover until he was suspended on or about November 16, 2023.

48.    From approximately September 28, 2023, through October 15, 2023, Sgt. Medina allowed Plaintiff to work solo patrol as a "ghost phase," but he never submitted any records or paperwork to account for Plaintiff's time in solo patrol. Sgt. Medina then said that Plaintiff would be going back to FTO Ruiz for his last phase of training.

49.    On or about October 7, 2023, Plaintiff had a meeting with Sgt. Medina to discuss Plaintiff's training progress and the missing training records. During this meeting, Sgt. Medina stated Plaintiff had completed 560 training hours which is far beyond the standard 160 hours of field training that Lateral Officers are ordinarily subjected to when working for Guadalupe Police Dept. Sgt. Medina further stated that he was going to set up a meeting with the Chief to discuss why Plaintiff's training has continued unnecessarily long. Several days later, Sgt. Medina advised Plaintiff once again that the Agency needs to locate all the missing or incomplete records so Plaintiff can complete his training.

50.    As of October 7, 2023, the police RMS (Record Management System) for Guadalupe Police (ATIMS) showed that Plaintiff had the highest number of arrests, citizen contacts (consensual encounters), and investigations conducted, amongst the entire police agency in the last 12 months. In addition, Plaintiff had not received any written or verbal reprimands, and no citizen complaints had been made against Plaintiff at any time during his employment for Defendants.

51.    On or about November 14, 2023, Plaintiff sent an email to Lt. Limon, Sgt. Medina, FTO Ruiz, and Officer Kuhbander, questioning the length of his training compared to other officers, the missing documents and training logs from his personnel file, and a request to be released from the training program into solo patrol.

52.    On or about November 16, 2023, after Plaintiff did not receive a response, he sent the same email to Chief Cash, in which he disclosed numerous California Peace Officer Standards and Trainings regulatory violations as well as violations of Peace Officer Bill of Rights and State.

53.    Approximately two hours later, Chief Cash called Plaintiff into his office and brought up a previous use-of-force incident.  Nevertheless, Plaintiff had not received any reprimand about this incident, he was told that he acted properly, and a Use Force report was not completed promptly after the incident, which was supposed to be done by a supervisor.  During this meeting Chief Cash brought this up as a basis for alleging Plaintiff did something wrong or improper even though he was not the supervisor nor did he ever have access to create, generate or modify such a form he was requesting.

54.    During this meeting, Chief Cash made several governmental missteps and flagrantly disregarded and violated Plaintiff's California Peace Officer Bill of Rights (POBR).  Specifically, Chief Cash accused Plaintiff of acting improperly during two separate use of force incidents.  Chief Cash also stated that he is launching an administrative investigation into Plaintiff regarding these incidents, and placed Plaintiff on an administrative suspension.

55.    Nevertheless, according to Sgt. Medina, Plaintiff had already been cleared of any wrongdoing in any previous use of force incident, which led Plaintiff to believe that the suspension was in retaliation for writing the two letters (one regarding the audit and the other inquiring about his training), and also in retaliation for requesting and/or using accommodations.

56.    On or about November 23, 2023, Officer Kuhbander called Plaintiff and stated he will testify against him in court, and that this was not in retaliation or discrimination and that Plaintiff just needs to quit.  Officer Kuhbander also stated that he sent their private and confidential communication to Chief Cash for his review.

57.    On or about December 4, 2023, Plaintiff and his Union Attorney attended a meeting with Chief Cash, who questioned why the Attorney was present at the meeting, even though the Police Officer Bill of Rights allows the presence of counsel during such meetings.  The meeting lasted approximately three minutes, in which Chief Cash stated that Plaintiff was not a good fit for the Department and he was terminated effective immediately.

COMPLAINT

58.     The Union Attorney then asked Chief Cash about the reason for termination and about the possibility of an appeal. Chief Cash then became upset and said he was not required to disclose any information concerning an employee to an Attorney.  Chief Cash then officially ordered the attorney exit the building, stating, "This is a private police area only, you need to leave or you're subject to arrest."

59.     As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

60.     Plaintiff is informed and believes, and based thereon alleges, that Defendants have engaged in other illegal and wrongful acts, which are currently unknown to Plaintiff.  Upon discovery of such acts, Plaintiff will amend this Complaint to allege these unknown illegal and wrongful acts and omissions committed by Defendants.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

61.     Within the time provided by law, Plaintiff filed his Complaint with the California Civil Rights Department (formerly known as the Department of Fair Employment and Housing), in full compliance with these sections, and received the right-to-sue letter regarding his claims on December 12, 2024.  A true and correct copy of the right-to-sue letter is attached hereto as **EXHIBIT A**, and incorporated herein by reference.  Plaintiff has therefore exhausted his administrative remedies as a pre-conduction to filing this action, pursuant to Gov. Code, §§ 12960 and 12965.

62.     Within the time provided by law, Plaintiff submitted his Whistleblower Retaliation Complaint to the California State Personnel Board, in compliance with Gov. Code, § 8547.8(a) and Cal. Code Regs., tit. 2, §67.2.  A true and correct copy of Plaintiff's Whistleblower Retaliation Complaint is attached hereto as **EXHIBIT B**, and incorporated herein by reference.

## FIRST CAUSE OF ACTION

### DISCRIMINATION

**[Gov. Code §§ 12940, *et seq.*]**

63.     Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in

- 13 -

the Complaint.

64.     Defendants have breached their statutory and self-imposed duties owed to Plaintiff under Defendants' representations, policies and procedures, and under California law, including Gov. Code, §§12900, 12940(a) and 12926, *et seq*.  At all times, Gov. Code §§12900, 12940(a), 12940(k)(l)(A)(B)(i)(iii) including 12940(k)(4) and 12926, *et seq.*, was in full force and effect and binding upon Defendants.  These sections provide that no employer shall discriminate against an employee because of a "physical disability" or "medical/mental condition".  At all times herein, Plaintiff had a protected mental/medical and/or physical disability conditions.  Defendant discriminated against Plaintiff based on his protected mental/medical and/or physical disability conditions.

65.     At all times relevant, herein, (1) Plaintiff suffered from a disability and/or was regarded as disabled, to wit, perceived by Defendants as having a medical condition/ physical disability; (2) was otherwise qualified to do the job, and; (3) suffered an adverse employment condition because of his perceived by Defendants as having a medical/physical disability.

66.     Plaintiff sustained occupational injury on or about June 19, 2023.  As a result of his injury, Plaintiff suffered from medical/physical disability and/or was perceived by Defendants as having these conditions.  These medical matters were communicated to Defendants through Plaintiff and through Plaintiff's medical providers.  Additionally, Plaintiff was qualified as Defendants' employee to work.  However, Defendants took adverse employment actions against Plaintiff because of his medical/physical disability, and eventually terminated his employment.

67.     As a direct and proximate result of Defendants' action against Plaintiff, Plaintiff suffered (a) humiliation, serious mental anguish, and emotional and physical distress; and (b) loss of past and future wages, and employment benefits and opportunities, on account on which Plaintiff is entitled to compensatory damages.  The exact amount and nature of such damages are presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information, or will prove the same at the time of trial.  In addition, Plaintiff has been forced as a result to Defendants' breach to retain a law firm to enforce his rights, and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which

Plaintiff is entitled to according to proof.  Plaintiff claims such amounts as damages pursuant to Gov. Code, §12965(b) together with prejudgment interest pursuant to Civil Code, §3287 and/or any other provision of the law providing for prejudgment interest.

## SECOND CAUSE OF ACTION

### RETALIATION

### [Gov. Code § 12940(h)]

68.    Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

69.    Defendants have breached their statutory and self-imposed duties owed to Plaintiff under defendants' representations, policies and procedures, and under California law, including Sections 12900 and 12926, *et seq.,* of the Gov. Code.  At all times, Gov. Code, §§12926, *et seq.*, was in full force and effect and binding upon Defendants.  These sections provide that no employer shall retaliate against an employee because of a "physical disability" or "medical condition" or a perceived "physical disability" or "medical condition" and/or for because the employee has opposed discrimination under these sections.

70.    At all times herein, Plaintiff had a protected medical and/or physical condition and is a member of the class entitled to protection under these code sections.  In addition, Plaintiff had requested and/or used reasonable accommodations.

71.    As a result, and in retaliation against Plaintiff for his actions, Defendants subjected Plaintiff to adverse employment actions as described above, including, but not limited to, terminating Plaintiff's employment.  Essentially, Defendants retaliated against Plaintiff because he opposed medical/physical discrimination based on his protected conditions.

72.    The foregoing described adverse employment actions were taken in part or in whole because of Plaintiff's participation in a protected activity and because of his objections and opposition to unlawful conduct, as well as Plaintiff's efforts to exercise his rights under the FEHA and otherwise.

73.    Defendants' conduct as alleged above constituted unlawful retaliation in employment on account of Plaintiff's protected activity in violation of Gov. Code, §12940(a).

74.    As a result of Defendants' conduct and breach of the code section, Plaintiff has suffered

Exhibit F - 15

and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court.  Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits, and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiff has been forced as a result to Defendants' breach to retain a law firm to enforce his rights, and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

### THIRD CAUSE OF ACTION

### FAILURE TO MAKE REASONABLE ACCOMMODATIONS

### [Gov. Code § 12940(a) & (m)]

75.    Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

76.    Defendants have breached their statutory and self-imposed duties owed to Plaintiff under California law, including Section 12940(m) of the Gov. Code.  At all times, Gov. Code, §12940(m) was in full force and effect and binding upon Defendants.  The statute provides that "[i]t shall be an unlawful employment practice… for an employer… to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."  This statute further imposed an affirmative duty on Defendants to engage in an interactive process to reach a reasonable accommodation for an employee's disability.

77.    At all times herein mentioned, Plaintiff was qualified for the position he has held and had been dutifully performing his duties since the date of hire.

78.    Plaintiff has a protected medical/physical condition.  However, Defendants, and their agents and employees, failed to reasonably accommodate Plaintiff's disabilities after being apprised that Plaintiff had injuries to his right shoulder preventing him the ability to work properly.  Plaintiff further alleges that Defendants failed to engage in an interactive process to reach a reasonable accommodation concerning Plaintiff's disabilities and failed to comply with the restrictions imposed by Plaintiff's physicians.

79.    Plaintiff believes and thereon alleges that his requests for and/or use of reasonable

COMPLAINT

accommodation concerning his disabilities were a motivating and substantial factor in Defendants' determination to suspend and eventually terminated him.

80.    Defendants' conduct toward Plaintiff, as alleged above, constituted an unlawful failure to make a reasonable accommodation in employment in violation of Gov. Code, § 12940(m).

81.    As a result of Defendants' conduct and breach of the code section, Plaintiff has suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court.  Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits, and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiff has been forced as a result to Defendants' breach to retain a law firm to enforce his rights, and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.  Plaintiff claims such amounts as damages pursuant to Gov. Code, §12965(b) together with prejudgment interest pursuant to Civil Code, §3287 and/or any other provision of the law providing for prejudgment interest.

## FOURTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

### [Gov. Code § 12940(n)]

82.    Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

83.    Defendants have breached their statutory and self-imposed duties owed to Plaintiff under California law, including Gov. Code, §12940(n).  At all times, Gov. Code, §12940(n) was in full force and effect and binding upon Defendants.  This section makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effect reasonable accommodations, if any, in response to a request for a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."  California case law has established that the request need not include any particular 'magic words' to trigger an employer's duty to engage in the interactive process. *Prilliman v. United Air Lines, Inc.,* (1997) 52 Cal.App.4th 935.  Instead, Defendants violated this FEHA provision with their policies in place of not

- 17 -
Exhibit F - 17

affording their employees reasonable accommodations for physical disabilities.

84.     During his employment, Plaintiff suffered from a recognized medical injury / disability. Defendants acknowledged that Plaintiff is suffering from a disability, but instead of trying to find him suitable duties according to his work restrictions, Defendants had Plaintiff work in violations of his work restrictions imposed by is physicians, suspended Plaintiff, and eventually terminated his employment.

85.     At all times herein mentioned, Plaintiff was qualified for the position he held and had been dutifully performing his duties since the date of hire.  Therefore, Defendants' conduct toward Plaintiff, as alleged above, was in violation of <u>Gov. Code</u>, §12940(n) by failing to engage in an interactive process with Plaintiff.

86.     As a result of Defendants' conduct and breach of the code section, Plaintiff has suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court.  Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits, and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiff has been forced as a result to Defendant's breach to retain a law firm to enforce his rights, and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to pursuant to <u>Gov. Code</u>, §12965(b).

## **FIFTH CAUSE OF ACTION**

### **FAILURE TO PREVENT DISCRIMINATION & RETALIATION**

#### **[Gov. Code §12940 (j)&(k)]**

87.     Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

88.     Defendants have breached their statutory and self-imposed duties owed to Plaintiff under Defendants' representations, policies and procedures, and under California law, including <u>Gov. Code</u>, §12940(k).  At all times, <u>Gov. Code</u>, §12940 (k) was in full force and effect and binding upon Defendants.  This section provides that it is unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination, harassment or retaliation from occurring."

89.     Plaintiff is a member of the class entitled to protection under these code sections.

Exhibit F - 18

90.     As a result of Defendants' conduct and breach of the code section, Plaintiff has suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court.  Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits, and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiff has been forced as a result to Defendants' breach to retain a law firm to enforce his rights, and has incurred and will continue to incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

### SIXTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91.     Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

92.     When Defendants, and their agents and employees, committed acts including but not limited to those described in this Complaint in the proceeding paragraphs, and failed to take reasonable measures to respond to Plaintiff's complaints about the retaliation and discrimination to which Plaintiff was being subjected, they did so deliberately and intentionally to cause Plaintiff to suffer humiliation, mental anguish, physical harm, lose the opportunity to be promoted, and emotional distress.  The outrageousness of the abovementioned conduct is amplified due to the abuse of their position, which gives actual, and apparent authority over the Plaintiff, such as is commonly found in employment relationships.

93.     Defendants, and their agents and employees, were aware that Plaintiff was relying upon his employment, that mistreating Plaintiff, discriminating and retaliating against Plaintiff, and terminating Plaintiff, would cause him to suffer extreme emotional distress, and other consequential damages.

94.     Defendants, and their agents and employees, did the acts described in this Complaint, particularly but not limited to wrongfully terminating Plaintiff's employment, they did so deliberately and intentionally to cause emotional distress to Plaintiff.

95.     The acts of Defendants, and their agents and employees, and each of them, as well as

their failure to take reasonable responsive action to Plaintiff's complaints, cannot be normally expected to occur in the workplace.

96.     In acting as described above, and in abusing a position of apparent authority over Plaintiff, Defendants, and their agents and employees, clearly stepped out of the proper role as employer and used their position or authority to cause Plaintiff to suffer emotional distress.

97.     The above acts of Defendants, and their agents and employees, inclusive, constituted intentional infliction of emotional distress and such conduct of Defendants was a substantial and/or determining factor in causing damage and injury to Plaintiff.

98.     As an actual and proximate result of Defendants' conduct and breach of the code section, Plaintiff has suffered and will continue to suffer damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court. In addition, Plaintiff suffered physical injury and became mentally upset, stressed, and aggravated. Plaintiff has experienced stress, migraines, weight loss, illness, anxiety, humiliation, embarrassment, sleeplessness, depression, and emotional distress. Plaintiff claims general damages for physical injury and mental distress in an amount according to proof at time of trial. Plaintiff is entitled to damages, including, but not limited to lost wages, salary, benefits, and certain other incidental and consequential expenses and damages in an amount to be shown at the time of trial.

## SEVENTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

#### [Gov. Code §12900, *et seq.*]

99.     Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

100.    Defendants terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, Plaintiff's employment was terminated in part because of Plaintiff's protected status (disability, and/or medical condition), because of Plaintiff's protected status protected activity (requesting and/or using reasonable accommodations), and for reporting waste, fraud, abuse of authority, or violation of law. These actions were in violation of FEHA, the California Whistleblower Protection Act and the California Constitution.

Exhibit F - 20

101.    Defendants are subject to the laws of the State of California, including Gov't Code, §12940(a), which provides that an employer may not discharge a person from employment based on physical disability.

102.    Plaintiff was terminated from his employment on or about December 4, 2023, at a time only a short time after Plaintiff had been dealing with pain and discomfort due to injuries that resulted in him having difficulties performing some job functions.

103.    The aforesaid acts of Defendants through their managers, officers, agents, and employees was in violation of public policy by terminating Plaintiff.  The public policy in California is not to discriminate or treat any employee differently in any aspect of their employment.  Plaintiff should have been provided the opportunity to discuss and seek an accommodation(s).

104.    As a result of Defendants' wrongful termination of Plaintiff's employment, Plaintiff has suffered general and special damages in sums according to proof.

105.    At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated in Labor Code, §§132a and 3202 et seq. was to prohibit employers from retaliating or discriminating against employees injured in the course of their employment.  This public policy of the State of California is designed to protect all employees and to promote the welfare and wellbeing of the community at large.  Accordingly, the actions of Defendants, and their agents and employees, in terminating Plaintiff on the grounds alleged and described herein were wrongful and in contravention and violation of the express public policy of the State of California, to wit, the policy set forth in Labor Code, §§132a and 3202 et seq. and the laws and regulations promulgated thereunder

106.    As a proximate result of Defendants' wrongful termination of Plaintiff's employment in violation of fundamental public policies, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

107.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff claims such amounts as damages pursuant to Gov't Code, §12965(b) together with prejudgment interest pursuant to Civil Code, §3287 and/or any other provision of the law providing for prejudgment interest.  Pursuant to Code of Civil Procedure, §§1021.5 and 1032, et seq., Plaintiff is entitled to recover

- 21 -
COMPLAINT

reasonable attorneys' fees and costs in an amount according to proof.

**EIGHTH CAUSE OF ACTION**

**RETALIATION**

**[Labor Code, § 1102.5]**

108.    Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

109.    Labor Code, § 1102.5(b) provides, "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

110.    Labor Code, § 1102.5(d) prohibits retaliation against an employee for having exercised his or her rights under subsection (b).

111.    Labor Code, § 1102.6 provides, "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5."

112.    Plaintiff is informed and believes, and based thereon alleges that, Defendants retaliated against him and terminated her employment for because of his disability, for requesting and/or using reasonable accommodations, for the audit letter he wrote, and for disclosing the California Peace Officer Standards and Trainings regulatory violations, as well as violations of Peace Officer Bill of Rights, in violation Labor Code, §1102.5.

Exhibit F - 22

113.     As a proximate result of Defendants' willful, knowing, and intentional violations of Labor Code, § 1102.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

114.     As a result of Defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

115.     As a result of the acts of Defendants, Plaintiff is entitled to reasonable attorney's fees and costs of said suit as specifically provided in California Code of Civil Procedure, § 1021.5.

**NINTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA WHISTLEBLOWER PROTECTION ACT**

**[Government Code, § 8547, *et seq*.]**

116.     Plaintiff repeats and incorporates by reference the allegations set forth elsewhere in the Complaint.

117.     California Government Code, section 8547.1 states, "[t]he Legislature finds and declares that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." Government Code, section 8547.3, subdivision (a) states, "[a]n employee may not directly or indirectly use or attempt to use the official authority or influence of the employee for the purpose of intimidating, threatening, coercing, commanding, or attempting to intimidate, threaten, coerce, or command any person for the purpose of interfering with the rights conferred pursuant to this article."

118.     As described herein, Plaintiff submitted an audit letter to the Chief, in which he raised concerns about Police Officer salaries, the hiring and vetting process, the Department's cars and equipment, and the Office Environment/Station Set up and Equipment.  In addition, Plaintiff submitted a letter to his supervisors in which he disclosed regulatory violations of the California Peace Officer Standards and Trainings, as well as violations of Peace Officer Bill of Rights.

119.     Government Code, section 8547.8, subdivision (a) provides: "A state employee or applicant for state employment who files a written complaint with his or her supervisor, manager, or the appointing power alleging actual or attempted acts of reprisal, retaliation, threats, coercion, or similar improper acts prohibited by Section 8547.3, may also file a copy of the written complaint with the State

Exhibit F - 23

Personnel Board, together with a sworn statement that the contents of the written complaint are true, or are believed by the affiant to be true, under penalty of perjury.  The complaint filed with the board, shall be filed within 12 months of the most recent act of reprisal complained about."

120.     Plaintiff has exhausted his administrative remedies as described above.

121.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

122.     As an actual and proximate result of Defendants' willful and intentional retaliation, Plaintiff has lost wages, benefits, and other out of pocket expenses.

123.     As an actual and proximate result of the aforementioned acts of Defendants, Plaintiff suffered physical injury and became mentally upset, stressed, and aggravated.  Plaintiff has experienced stress, migraines, weight loss, illness, anxiety, humiliation, embarrassment, sleeplessness, depression, and emotional distress.  Plaintiff claims general damages for physical injury and mental distress in an amount according to proof at time of trial.

124.     Government Code, section 8547.10, subdivision (c) states, "[i]n In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee or applicant for state employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. Punitive damages may be awarded by the court where the acts of the offending party are proven to be malicious.  Where liability has been established, the injured party shall also be entitled to reasonable attorney's fees as provided by law. However, any action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a), and the board has issued, or failed to issue, findings pursuant to Section 19683.

125.     Government Code, section 818 states, "n]otwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." Additionally, as addressed in *McAllister v. South Coast Air Quality Management District* (1986) 183 Cal.App.3d 653, 656, "punitive damages against a public entity are not allowed, *absent a specific statute expressly allowing them*." (Italics added.)  Therefore, as Government Code section 8547 is another "provision of

- 24 -
COMPLAINT

law" which "expressly allow[s ]"punitive damages against a public entity, Plaintiff hereby seeks punitive damages against Defendants. Government Code section 8547 .10, subdivision (c) reads, "[i]n addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee or applicant for state employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party. *Punitive damages maybe awarded by the court where the acts of the offending party are proven to be malicious*." (Italics added.) Furthermore, pursuant to Government Code, section 8547.2, subdivision (d), "'*Person' means an individual, corporation, trust, association, a state or **local government**, or an agency or instrumentality of any of the foregoing*." (Italics added.)

126.    While employed, as set forth above, Plaintiff made protected disclosures related to Defendants within the provisions of Section 8547 of the California Government Code.

127.    Plaintiff suffered acts of reprisal, retaliation, threats, coercion, or similar acts from Defendants, who intentionally proceeded to take such actions against Plaintiff.

128.    Plaintiff having made protected disclosures was a contributing factor in the Defendants' retaliation against Plaintiff.

129.    Defendants' acts, including the denial of job opportunities and assignments, failure to promote Plaintiff, Plaintiff's suspension, and ultimately, Plaintiff's termination, caused Plaintiff to suffer, and continue to suffer injury, including damages, as well as lost wages and benefits, severe emotional and physical distress, the exact amount of which will be proven at trial.  Additionally, Defendants' actions were done with malice, fraud or oppression, and in reckless disregard of Plaintiff's rights under California law. Accordingly, Plaintiff seeks an award of punitive damages in an amount-according to proof.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff ANDREW BREDA prays for judgment and relief against Defendants CITY OF GUADALUPE and CITY OF GUADALUPE POLICE DEPARTMENT, as follows:

1.  For general damages, according to proof;

2.  For special damages, according to proof;

3. For loss of earnings, according to proof;

4. For compensatory damages, including, but not limited to lost wages and non-economic damages in the amount according to proof;

5. For civil penalties under the <u>California Labor Code;</u>

6. For punitive damages, allowed by <u>California Government Code</u>, §8547.10(c)

7. That Defendants' violations as described above are found to have been willful and intentional;

8. Prejudgment and postjudgment interest at the maximum rate allowed by law;

9. For attorney's fees for prosecuting this action;

10. For costs of suit incurred herein; and

11. An award of such other and further relief that is proper and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff ANDREW BREDA hereby demands a trial by jury.

DATED: December 16, 2024                    **KOSNETT LAW FIRM**

By:   *Dan Yakobian*
Dan B. Yakobian, Esq.,
Louis V. Kosnett, Esq.
Attorneys for Plaintiff,
ANDREW BREDA

Exhibit F - 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# __EXHIBIT A__



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                             KEVIN KISH, DIRECTOR
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

December 12, 2024


Dan Yakobian
11400 West Olympic Boulevard, Suite 200
Los Angeles, CA 90064

RE:    **Notice to Complainant's Attorney**
       CRD Matter Number: 202412-27336209
       Right to Sue: Breda / City of Guadalupe et al.

Dear Dan Yakobian:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department


CRD - ENF 80 RS (Revised 2024/05)

Exhibit F - 28



STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

December 12, 2024

RE:    **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202412-27336209
Right to Sue: Breda / City of Guadalupe et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)

Exhibit F - 29



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

## Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

December 12, 2024

Andrew Breda

,

RE:  **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202412-27336209
Right to Sue: Breda / City of Guadalupe et al.

Dear Andrew Breda:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective December 12, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)

Exhibit F - 30

1

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
## Under the California Fair Employment and Housing Act
## (Gov. Code, § 12900 et seq.)

2

3

4

**In the Matter of the Complaint of**

5

Andrew Breda                                                    CRD No. 202412-27336209

6

                                        Complainant,

7

vs.

8

City of Guadalupe
918 Obispo Street

9

Guadalupe, CA 93434

10

City of Guadalupe Police Department
4490 Tenth Street

11

Guadalupe, CA 93434

12

                                        Respondents

13

_____

14

**1.** Respondent **City of Guadalupe** is an **employer** subject to suit under the California Fair

15

Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

16

**2.**Complainant is naming **City of Guadalupe Police Department** business as Co-
Respondent(s).

17

**3**. Complainant **Andrew Breda**, resides in the City of **,** State of **.**

18

19

**4**. Complainant alleges that on or about **December 4, 2023**, respondent took the
following adverse actions:

20

21

**Complainant was discriminated against** because of complainant's disability (physical,
intellectual/developmental, mental health/psychiatric) and as a result of the discrimination

22

was terminated, denied hire or promotion, reprimanded, suspended, denied work
opportunities or assignments, denied accommodation for a disability.

23

**Complainant experienced retaliation** because complainant reported or resisted any form

24

of discrimination or harassment, requested or used a pregnancy-disability-related
accommodation, requested or used a disability-related accommodation and as a result was

25

26

                                        -1-

27

Date Filed: December 12, 2024

28

CRD-ENF 80 RS (Revised 2024/05)

Exhibit F - 31

terminated, denied hire or promotion, reprimanded, suspended, denied work opportunities or assignments, denied accommodation for a disability.

**Additional Complaint Details:** Respondents, City of Guadalupe and Guadalupe Police Department (collectively hereafter, "Respondents"), hired Complainant Andrew Breda ("Complainant"), on or about March 22, 2023, as a Lateral Police Officer.  Upon hire, Complainant was told that he was going to do a four-week training program since he already possessed an active Peace Officer Standards and Training (POST) certificate.

From approximately April 30, to May 10, 2023, Complainant was subjected to an unusually long field training program that other officers were not subjected to.  After four weeks, Complainant inquired why he was still in training.  In response, Complainant's superior, Lt. Carlos Limon said that the Chief of Police, Michael Cash, was having Complainant go through a 16-week training program since since he was from out of state.  During this time, Officer Ramirez (also a Lateral Officer) completed his four-week training program and was signed off to work on his own.

On or about June 19, 2023, Complainant was injured during the scope and course of his employment, while apprehending a suspect.  At the time of Complainant's injury, he had four weeks remaining to complete the 16-week training program.  Specifically, Complainant suffered from Right Shoulder Strain and Right Shoulder Pain.  Accordingly, Complainant's physician placed him on modified duties and requested accommodations from Respondents.  Complainant was first placed on an eight-week medical leave of absence, and on or about August 21, 2023, he was allowed to return to work with modified/light duties.  Nevertheless, Respondents failed to accommodate Complainant and failed to place him on modified/light duties, as requested by his physician.  Specifically, Complainant was told by several Officers and Sgt. Medina that the Department and the Officers are upset with him for being out on leave.  Chief Cash forced Complainant to work in his full duty capacity in uniform and without accommodations while he was injured.  Complainant notified the Chief of the ongoing shoulder issues, and in response, Chief Cash told Complainant that he needed to come to work and perform.  In addition, Chief Cash told Complainant, "If you don't come to work, we'll just replace you and get someone else to do it. You need to be here at work, If I can work with injuries so can you or anybody else."  In another conversation, when Complainant told Chief Cash about his continued pain and that he may need to take additional time off, Chief Cash responded, "If you go off again, you're going to be replaced and we'll just be done with you and forget about you. You're on probation remember that."  During the same time, Complainant was routinely tasked with physically assisting the Chief with loading his personal horse equipment on and off the Guadalupe Police Vehicle and his personal vehicle, in violation of his accommodations.  In addition, Lt. Limon told Complainant to "take a bunch of Ibuprofen and Norcos and to come to work and not complain."  Officer Kuhbander made similar comments as well and continued to say that Complainant's coworkers were upset with him for getting injured and that he has become a burden to the police agency operations.

-2-
*Complaint – CRD No. 202412-27336209*

Date Filed: December 12, 2024

CRD-ENF 80 RS (Revised 2024/05)

Exhibit F - 32

1    While Complainant was supposed to be on light duties, Chief Cash assigned him the task of
2    conducting a full scale audit and investigation of the Department by writing a letter outlining
     his concerns about the Department, what needs improving, and Complainant's
3    recommendations.  Accordingly, on or about August 29, 2023, Complainant submitted his
     letter to the Chief, in which he raised concerns about Police Officer salaries, the hiring and
4    vetting process, the Department's cars and equipment, and the Office Environment/Station
     Set up and Equipment.  When Chief Cash read the letter, he became upset with the letter
5    and said, "this is nothing more than a bunch of complaints and problems."  Chief Cash then
6    told Complainant that the reason for having him write the letter was because he wanted to
     see his writing style and give him something to do.  Even though the letter was only
7    submitted to Chief Cash, in the following days, Complainant's fellow Officers told him
     they heard about the letter, and that Chief told them everything.  This caused a hostile work
8    environment as other Officers were now pressuring Complainant to resign and said they did
     not know if they could trust Complainant.

9    On or about September 22, 2023, Complainant was approved to return to his fully duties at
10   work without accommodations.  Accordingly, he was sent back to Field Training with Sgt.
     Medina, who advised Complainant that he was back to Phase 1 and that his training was
11   reset at the request of Chief Cash and Lt. Limon.  When Complainant asked for an
     explanation, none was given.  Accordingly, Complainant was denied work opportunities
12   and/or assignments, in addition to a promotion, because of his disability and in retaliation for
     requesting and/using disability-related accommodations.

13   On or about November 14, 2023, Complainant sent an email to Lt. Limon, Sgt. Medina, FTO
14   Ruiz, and Officer Kuhbander, questioning the length of his training compared to other
     officers, the missing documents and training logs from his personnel file, and a request to be
15   released from the training program into solo patrol.  After Complainant did not receive a
     response, he sent the same email to Chief Cash on or about November 16, 2023.
16   Approximately two hours later, Chief Cash called Complainant into his office and brought up
     a use-of-force incident that took place in June 2023.  Nevertheless, Complainant had not
17   received any reprimand about this incident, he was told that he acted properly, and a Use
     Force report was not completed promptly after the incident, which was supposed to be done
18   by a supervisor.  During this meeting Chief Cash brought this up as a basis for alleging
     Complainant did something wrong or improper even though he was not the supervisor nor
19   did he ever have access to create, generate or modify such a form he was requesting.
     During this meeting, Chief Cash made several governmental missteps and flagrantly
20   disregarded and violated Complainant's California Peace Officer Bill of Rights (POBR).
     During the meeting, Complainant was accused of acting improperly during two separate use
21   of force incidents.  Chief Cash stated he is launching an administrative investigation into
     Complainant regarding these incidents, and placed Complainant on an administrative
22   suspension.  According to Sgt. Medina, Complainant had already been cleared of any
23   wrongdoing in any previous use of force incident, which led Complainant to believe that the
     suspension was in relation for writing the two letters and inquiring about his training because
24   the Department had lost and/or not completed all the training records as required by CA
     POST Regulatory Board.

25

26                                              -3-
                                   *Complaint – CRD No. 202412-27336209*
27
     Date Filed: December 12, 2024
28

                                                           CRD-ENF 80 RS (Revised 2024/05)

Exhibit F - 33

1

2   On or about November 23, 2023, Officer Kuhbander called Complainant and stated he will testify against him in court and that this was not in retaliation or discrimination and that Complainant just needs to quit.  Officer Kuhbander also stated that he sent their private and confidential communication to Chief Cash for his review.

3

4   On or about December 4, 2023, when Complainant and his Union Attorney attended a meeting with Chief Cash, who questioned why the Attorney was present at the meeting (although the Police Officer Bill of Rights allows the presence of counsel during such meetings).  The

5

6   meeting lasted approximately three minutes, in which Chief Cash stated that Complainant was not a good fit for the Department and he was terminated effective immediately.  The Union Attorney then asked Chief Cash about the reason for termination and about the possibility of an appeal.  Chief Cash then became upset and said he was not required to disclose any information concerning an employee to an Attorney.  Chief Cash then officially ordered the attorney exit the building, stating, "This is a private police area only, you need to leave or you're subject to arrest."

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

-4-

*Complaint – CRD No. 202412-27336209*

27

Date Filed: December 12, 2024

28

CRD-ENF 80 RS (Revised 2024/05)

Exhibit F - 34

1    VERIFICATION

2    I, **Dan Yakobian**, am the **Attorney** in the above-entitled complaint.  I have read the
3    foregoing complaint and know the contents thereof.  The matters alleged are based
     on information and belief, which I believe to be true.

4
     On December 12, 2024, I declare under penalty of perjury under the laws of the State
5    of California that the foregoing is true and correct.

6                                                                   **Los Angeles, California**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                              -5-
                                   *Complaint – CRD No. 202412-27336209*
27
     Date Filed: December 12, 2024
28
                                                          CRD-ENF 80 RS (Revised 2024/05)

Exhibit F - 35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>EXHIBIT B</u>**

## _ANDREW NOEL BREDA V. GUADALUPE POLICE DEPARTMENT_

### WHISTLEBLOWER RETALIATION COMPLAINT

**Employee's Name:** ANDREW NOEL BREDA
**Classification:** WHISTLEBLOWER AND RETALIATION COMPLAINT
**Mailing Address**: 2940 WEST BLVD, LOS ANGELES, CA 90016

### I.    NATURE OF THE COMPLAINT

I have been retaliated against during my employment as a Lateral Police Officer with the Guadalupe Police Department as a result of having reported improper governmental activities and/or as a result of my having refused to obey an illegal order or directive.  The entity and/or persons that have retaliated against me are as follows:

Guadalupe Police Department, City of Guadalupe, Guadalupe Human Resources Department.

Each individual employee, by name and job title as follows:

- Michael Cash – Chief of Police
- Carlos Limon – Police Lieutenant
- Frank Medina – Police Sergeant
- Heath Miller – Police Training Officer
- Omar Ruiz – Police Training Officer
- Christopher Orozco – Police Officer / TASER Instructor
- Michael Kuhbander – Police Officer / Union President
- Amelia Villegas – Human Resource Director for City of Guadalupe (Interim)
- Todd Bodem – City Manager for City of Guadalupe
- Tegnear Butler – Human Resource Director for City of Guadalupe

### II.    STATEMENT OFFACTS

_INCIDENTS:_

1. Beginning March 22, 2023, until my termination on December 4, 2024, I was employed as Lateral Police Officer with Guadalupe Police Department.

My duties were more advanced and exhaustive in comparison to an Entry Level Police Officer otherwise known as a Police Officer Trainee. In my capacity as Lateral Police Officer I would perform basic police officer functions such as enforcing city, state, and federal law. Occasionally I would work out of classification and assist with training of new Police Officer personnel. While working out of classification I was never compensated at a higher rate or provided with any additional benefits. At no point was I ever certified by the California State Peace Officer Standards and Training also known as POST as a training instructor.

Prior to my whistleblowing complaint, I had never received a written reprimand or a notice of adverse action by any supervisor or manager.

2. Immediately upon hire a series of governmental missteps, malfeasance, improprieties, and overall lack of due diligence was exhibited by Guadalupe Police executive personnel.

Upon hire I was verbally advised by Lieutenant Limon and Sergeant Medina that I would participate in a 4-week abbreviated field training program due to my experience and advanced level law enforcement training that I had already possessed. During my initial 4-week training period, there was an approximately 800-page Police Officer Orientation Binder that contained various training bulletins and information regarding agency standard operating procedures & other relevant new hire police training material. This binder is mandated by CA POST Commission and is subject to inspection and review by CA POST regulators. From March 22, 2023 – December 4, 2023, I had a total of (4) 800-page binders. For reasons still unknown to this day, the binders went missing which contained all my official training records. This binder is significant as Officers are unable to complete the training program unless the binder is *completely* signed and dated by the Officer in training and his/her trainer for that specified period. Since all my training records were missing or incomplete, I never completed the training program despite being employed with the agency for nearly 9 months. On various occasions, I was instructed by Lt. Limon or Officer Kuhbander, to "fill out the binder and back date everything to make it appear as though you guys properly discussed the training and signed off on it." This is completely improper and in violation of CA POST regulations. It is also falsifying governmental records.

3. On various occasions, I raised concerns about the missing governmental records (CA POST training records). These concerns were raised verbally to the following individuals.

   Lt. Limon, Sgt. Medina, Officer Ruiz, Officer Orozco, Officer Miller, Officer Kuhbander

   When I raised these concerns, I was always reassured that I was progressing properly through the training program and that I had nothing to worry about. On at least 5 occasions, Lt. Limon, Sgt. Medina, and Officer Kuhbander conducted meetings about my training progress. To my knowledge and from what was reported to me by Sgt. Medina and Officer Kuhbander, I would have been off training if the agency could locate all my missing 800-page binders which contained all my training records. Again, to this day, the binders are all still missing or missing pages for unknown reasons.

   The significance of these binders is the following:

   Allows me to promote to hire ranking within the police agency;
   Allows me to elevate on the pay scale;
   Allows me to work overtime opportunities;
   Allows me to obtain my California State POST Certificate (BASIC POLICE CERTIFICATE);
   Allows me to have a "regular 3/12" patrol schedule.

4. From approximately late May 2023 until my termination in December 2023, I worked with Sgt. Medina, Officer Miller, Chief Cash, Officer Orozco, and Lt. Limon on various occasions. During this time period, each of these Officers were my training Officers or in police jargon "FTO." There are approximately 45 missing Daily Activity Reports also known as "DOR's." Per CA POST Commission, "***The Daily Observation Report (DOR) and Narrative Evaluation are key components of the Field Training Program. In combination, these forms document the trainee's level of performance for each required category and clearly identify areas of competency, outstanding performance, or the need for remedial training.***" Accordingly, this is the only way a

police agency can authentically, honestly, and fairly accurately track and monitor a new Officers advancement through the training program.

5.   When I worked with the aforementioned Officers, a DOR was never completed or discussed with me. There are approximately 45 missing DOR's. Since a DOR was never completed or discussed with me, I have no way of knowing or properly gauging my field performance, neither does the police agency. Further, with these records not being completed and submitted into my CA POST file, I was thereby unable to ever complete the Field Training Program. Without the field training program being completed, I would never advance in pay increase or become a permanent employee of the city.[1]

6.   On June 19, 2023, Sgt. Medina and I were in a physical fight with a suspect. During this fight I sustained an injury to my right shoulder. The following day I went to the police department to file a worker's compensation injury claim. I was subsequently seen by a city workers compensation doctor and placed completely off-work for approximately 8 weeks.

This incident also resulted in a use of force by law enforcement which mandated a Use of Force report be promptly completed by a supervisor, in this case, Sgt. Medina. This report was never completed, which I did not find out until my suspension meeting with Chief Cash which occurred on November 16, 2023. During this meeting Chief Cash brought this information up as a basis for alleging I did something wrong or improper even though I was not the supervisor nor did I ever have access to create, generate or modify such a form he was requesting from me. During this meeting, Chief Cash made several governmental missteps and flagrantly disregarded and violated my California Peace Officer Bill of Rights (POBR). These rights are afforded to Police Officers during any situation where the Officer is likely subject to punitive action by the police agency. At no time was I ever advised of my POBR rights. When I asked the Chief, "do I need an attorney present to proceed with this meeting?" He responded, "No." During the meeting, I was accused of "possibly" acting improperly during two separate use of force incidents. Chief Cash stated he is launching an administrative investigation into me regarding these incidents.[2]

7.   On August 21, 2023, I returned to work with a "modified/light duty requirement"

The city and its police department agreed to said modification in a letter the Human Resources Department provided and requested that I sign. My light duty accommodations were never provided or accepted by the police agency. I was often required to wear a full police uniform and a heavy police duty belt. During my time on light-duty I was required to engage in Law Enforcement actions and patrol the streets with Chief Cash. I expressed grave concern regarding this, as I believed it placed not only the public in danger, but myself and my fellow partners in danger because I was in no shape to perform law enforcement activities. Chief Cash stated, "If you don't come to work, we'll just replace you and get someone else to do it. You need to be here at work, If I can work with injuries so can you or anybody else."  Lt. Limon was also privy to these conversations when I asked Chief Cash to please allow me to be off work due to the excruciating pain I was

---

[1] https://post.ca.gov/portals/0/post_docs/publications/field-training-program/FTP/FTPVol1/A-2.pdf

[2] https://apps.sdsheriff.net/PublicDocs/SB978/Human%20Resource%20Services%20Bureau/Professional%20Staff%20Development/Professional%20Staff%20Training/Department%20Supervisor/POBR%20-%20In%20Sheriff%20(201909%20MPB).pdf

experiencing. Lt. Limon would often laugh and say things such as "just take a bunch of pills like Norco's and ibuprofen and come to work! You should tell your doctor to sign you off and that you're fine." Lt. Limon made these comments at least on 2 different occasions. Officer Kuhbander made similar comments as well and continued to say that my co-workers were upset with me for getting injured and that I've become a burden to the police agency operations.

While on light duty, Chief Cash would regularly leave me in the City alone as the sole Officer on duty as he ran errands in Santa Maria or went to his personal doctors appointments.

At least on 2 occasions, Chief Cash ordered me to ride with him in marked Guadalupe Police patrol unit. Once in the vehicle, he told me that we were going to get his personal horse equipment from the local horse stable and that he needed assistance loading it into the police vehicle. I informed him of my shoulder limitations, and he gave me a stern look and said that he's disappointed in me for not being a team player. Feeling pressured and in fear of losing my job, I assisted him with loading his horse equipment.

My light duty ran from approximately August 21, 2023 – September 21, 2023, during this 4-week period, at the behest of the Chief, I was assigned the task of investigating the department and writing a letter outlining my concerns about the department, what needs improving, and my recommendations. I submitted my letter to the chief. He became upset with the letter and said, "this is nothing more than a bunch of complaints and problems."

During this 4-week period, I assisted Chief Cash with numerous law enforcement investigations, made physical arrest, and issued citations for violations of the California Vehicle Code and Guadalupe City Municipal Code violations. Given the fact that I was actively engaging in law enforcement activities and at all times maintained full peace officer power to enforce California State Law, this time on light-duty shall have been accounted for in my personnel records and CA POST Records. When I inquired to Chief Cash if all 4-weeks were accounted for and if he was going to complete ethe daily DOR reports he responded to me, "I have not decided whether this should count or not." A police chief cannot arbitrarily decide what counts toward field training or not. It is a CA POST regulation.

On August 29, 2023 – I submitted my Guadalupe Police Department Audit to Chief Cash per his request and instruction (**Exhibit 1**). The report was submitted to Chief Cash ONLY, the following days Officers were telling me about they heard about the letter, and that chief told them everything. This caused a hostile work environment as officers were now pressuring me to quit and said they didn't know if they could trust me.

While on "light-duty" status, I was assigned a child sexual assault investigation case. The victim was a 4-year-old female who accused her older cousin, a juvenile, of sexual assaulting her. The Chief assigned me this case, and he stated I have full control of how the case will be resolved. While I was conducting official police investigations into this case, Chief Cash rode me with me and/or drove me to the suspect/victim's residences numerous times to further investigate. Chief Cash repeatedly obstructed my investigation and cited false case studies that he believed affected my ability to prosecute the case. *Chief Cash specifically ordered me not to obtain the suspects Deoxyribonucleic acid (DNA) for a criminal analysis comparison with the victim's underwear.* This is unusual for a Chief to demand such law enforcement action not to be taken. The Chief is thereby

committing the crime of obstruction of law enforcement investigation in violation of California Penal Code 148(a)(1). Since the Chief is hindering my ability to execute my lawful duties that I am sworn to, I am unable to legally prosecute the case. Since I believed the suspect would continue his assaults and/or assault other victims since he worked at a daycare, I felt it was my civil duty as a Police Officer to protect the victims. I brought this issue up to Sgt. Medina, my immediate supervisor, and to Lt. Limon on separate occasions. I advised both of them that Chief Cash is hindering my ability to investigate the case and gather evidence. Both police administrators were in utter disbelief and instructed me to immediately obtain the suspects (DNA) in violation of Chiefs order not to. Both administrators agreed this was a public safety concern and that the Chief was directly endangering several minors in the custody of this accused suspect. Shortly thereafter, Sgt. Medina and I went to obtain the suspects' DNA via an oral swab.

8.   Throughout these months, routine verbal inquiries were made by me to Command staff and all training personnel almost on a weekly basis to Sgt. Medina, and FTO Ruiz about when my training would be completed. Each would point the finger at one another. Several inquiries were made by Union Representative Kuhbander to Lt. Limon about my training. Lt. Limon would point the finger back at FTO Ruiz and Sgt. Medina. Everyone was on different pages and did not provide me with an accurate answer or timeline even after repeated verbal inquiries.

9.   Another request to be placed back off-work due to shoulder injury continuance of pain.

Chief Cash told me, "If you go off again, you're going to be replaced and we'll just be done with you and forget about you. You're on probation remember that!" I feared my shoulder may not heal properly and that I would suffer from long time physical limitations due to overworking the shoulder and not allowing it to heal fully and properly… Since I needed my career, and the Chief of Police made it very clear if I used anymore sick time I would be terminated, I was left no choice but to fight through the agonizing pain.

10. On or about September 22, 2023, my light duty restrictions were lifted, and I was sent back to Field Training with Sgt. Medina. He advised me that I am back in Phase 1 and that my training was reset at the request of the Chief and Lt. Limon. When I asked for an explanation, none was given. No paperwork was ever produced to me telling me why my training was reset. During approximately 6 weeks with Sgt. Medina, He continuously would tell me I am almost done with training and that I am "on my last phase" despite the paperwork he would produce showing "Phase 1." He admitted that the department does not have a standardized training program, and that's it is not fair to officers. Again, the police agency can not just arbitrarily reset an officers training program, there has to be verified performance incompetence's or other substantiated reasoning for the Officers FTO Program to be extended, at no point can the program be "reset back to day 1." At most a police agency can do is "re-phase" an officer who is FAILING with a particular part of the program. Since I was never given most of my DOR's I have no way of knowing whether I was failing or not.

11. Missing Records regarding Law Enforcement Use of Force Incident

USE OF FORCE: September 27, 2023, at 0100 HOURS – ON THIS DAY, I CONDUCTED A Traffic stop on a vehicle for operating a vehicle with NO HEADLIGHT, THE DRIVER WAS HOSTILE, AGGRESSIVE, AND NON-RESPONSIVE TO MY QUESTIONING. THE DRIVER WAS SWEATY AND APPEARED UNUSUALLY NERVOUS. THE DRIVER WHITE KNUCKLED GRIPPED THE STEERING WHEEL AND KEPT LOOKING FORWARD AS IF HE WAS PLOTTING HIS ESCAPE PATH. DUE TO MY TRAINING AND EXPERIENCE, AND CONSISTENT WITH US CASE LAW, I ORDERED HIM TO GET OUT OF THE VEHICLE MULTIPLE TIMES WHICH HE REFUSED, I CURSED AT HIM TO GET OUT AND HE FINALLY GOT OUT IN A MANNER I PERCIEVED TO BE HOSTILE, HE REFUSED TO FOLLOW MY COMMANDS AND MY PARTNERS COMMANDS TO TURN AROUND, MY TASER WAS POINTED AT HIM AND SWITCHED TO THE ON POSITION WHICH ILLUMINATED 2 RED DOTS ONTO HIS PERSON. DURING THESE COMMANDS, I THEN ASKED HIM AGAIN TO TURN AROUND WHICH SUSPECT RESPONDED, "OR WHAT YOU GONNA DO!" I THEN discharged my taser device at HIM. The First deployment missed, second deployment penetrated his arm and only partially caused NMI (Neuromuscular incapacitation). Accordingly, he was still able to fight officers and he began to grab officers' handcuffs and continued resisting lawful arrest. After several seconds of fighting with the suspect, he still would not allow us to handcuff him, during this scuffle I injured my knuckles.

Sgt. Medina, and Ofc Orozco were on scene and assisted with the arrest. Sgt. Medina said it was good tase and proper use of force that was within policy. Orozco said he personally believed I acted prematurely. No investigation or policy violations were ever discussed with me about this incident. Sgt. Medina wrote a DOR months later praising me for the incident but told me not to sign it because the DOR had typos.

October 3, 2023, Sgt. Medina requested I complete a Use of Force form that he provided to me via email. This form should have been filled out immediately following the incident on the same day as soon as practical. Sgt. Medina was just now providing me with the form a week later.


On October 29, 2023, Sgt. Medina produced a DOR from 9/25/23 that he had just created (per his statement) and the DOR outlined good performance during the tasing incident. Sgt. Medina noted that I was within policy and that next time I should give verbal warning when feasible that I am going to tase a subject. Sgt. Medina again reiterated to me that I was cleared of any misconduct in this incident and that no investigation would be launched against me. Officers are not provided with any documentation when cleared from use of force.

12. From approximately September 28, 2023 – October 15, 2023, Sgt Medina allowed me to work solo patrol for approx. 2 weeks as my (*ghost phase*), but he never submitted any DOR or paperwork to account for my time in solo patrol.  Sgt. Medina then said I would be going back to FTO Ruiz for my last phase.

13. ATIMS – Guadalupe Record Management System Metrics

A records check of the ATIMS software would reveal that I had the highest stats for traffic stops, arrest, and enforcement actions as of November 12, 2023. It would also show I had the highest

amount of citizen contacts amongst my peer officers, some of whom were Officers at Guadalupe Police Department for several years who had not done traffic stops in 2 years.

These stats are a performance metric used by supervisors to gauge an officer's field performance. It should be noted that on multiple occasions the Chief or Sgt. Medina took over my in-custody arrest and placed it under their names in the ATIMS systems. Accordingly, this means when a metrics check is done, the arrest stat that should come up under my name will not, rather it will show their names.

November 11, 2023, - November 12, 2023 – I was sent back with FTO Ruiz, all paperwork with FTO Ruiz still showed phase 1 or phase 2. I asked Omar when I am getting off training and he said he has nothing to do with that. I then ask union president Officer Michael Kuhbander to speak to Lieutenant limon regarding my training and to please advise me of what the Lieutenant says. Kuhbander advised me that the Lieutenant said the decision is completely up to FTO Ruiz when and if I get off training.

14. Training Records Final Request and Emails

On November 12, 2023, Kuhbander bizarre statement – spoke with Union rep Kuhbander about my training PRIOR TO SHIFT STARTING, he advised me against sending an email stating I would "get in big trouble and likely get fired." I thought that was a bizarre statement and asked him why he thought I would get in "trouble or fired" and he said from previous experience dealing with GPD officials and his prior department (Santa Barbara Sheriff Department).

November 14, 2023 – I sent my letter (**Exhibit 2**), which was initially sent to Lt. Limon, Sgt. Medina, FTO Ruiz, and Union Rep Kuhbander, no one responded. According to the schedule for that month, Sgt. Medina and FTO Ruiz were on duty working night shift and should have received the email. At no point did I receive any electronic communication or otherwise that indicated the email did not successfully go through.

November 16, 2023 – I sent the same email to Chief Cash. Approximately 2 hours later, I was called into the station to meet with him for a "meeting." Refer to paragraph 6 for detailed information regarding this meeting. During the meeting I was placed on paid administrative leave, and the chief said he is opening a use of force investigation into me regarding a tasing incident that occurred September 25, 2023. According to Sgt. Medina, I had already been cleared of any wrongdoing in any previous use of force incident. I immediately knew this was retaliatory for putting things in writing inquiring about my training because the agency had lost and/or not completed all the training records as required by CA POST Regulatory board. Police agency administrators often use internal affairs investigations against personnel who bring up legitimate concerns about the agency malpractices or questionable tactics.

Throughout my time at Guadalupe Police Dept - Officer Orozco & others would tell me I am too proactive and making them look bad because they can't sleep on duty when I am working on shift with them – Chief would tell me things such as, we don't want your kind here, the city doesn't need officers like you here, you need to be more like Officer Orozco (The officer who sleeps 10 hours per night on duty and doesn't leave the police station) – A records check of ATIMS as of November 10, 2023, revealed that Officer Orozco has only conducted 2 traffic stops in the last 2 years.

November 23, 2023, at 1541 hours – Union Representative / Police Officer Michael Kuhbander called me and stated he will testify against me in court and states it's not retaliation or discrimination and that I just need to quit. Kuhbander also stated that he sent our private confidential communication to Chief Cash for his review. I believe this also contributed to Chief Cash unjust decision to terminate me. During some of these phone calls and text message communications I had with my Union Representative, I requested a Liberty Interest hearing. Probationary Officers are not entitled to "Skelly hearings" since we are at-will employees, however, we are entitled to Liberty Interest hearings to clear our name for perspective employment at other police agencies. I was never granted this opportunity.[3]

15. The Final Retaliation and Termination

On December 4, 2023, My Union Attorney (Tyler Harris with Ferrone and Ferrone Law Group) and I arrived at the Guadalupe Police Station at approximately 9:45 hours. We waited inside the lobby after we notified Joana Mendosa (Police Records/Front Desk Clerk) of our arrival. While waiting in the lobby, Officer Kuhbander appeared from the patrol room and came to the lobby area. Kuhbander extended his hand out to me and said, "it was nice working with you."  Shortly thereafter my attorney and I were escorted into Chief Cash Office in the back of the police station.

Upon entering Chief Cash's office, he asked why I had an attorney present and stated this was a confidential matter that attorneys are to have no involvement. Attorney Tyler Harris responded that he was working on behalf of the Guadalupe Police Officer Association and that I was entitled to legal representation under POBR (Police Officer Bill of Rights).  Chief Cash violated numerous POBR rules by not allowing me proper union representation regardless of the fact that I was on probation. Present during this meeting was also Human Resources Director Amelia Villegas. The meeting began and lasted approximately 3 minutes. Chief Cash stated that I was not a good fit for the department and that effective immediately I was terminated. Villegas handed me a paper which she stated explained my benefits after termination. Chief Cash handed me an envelope which inside contained a letter on Guadalupe Police Letter head that stated my employment ended effective December 4, 2023.

Attorney Tyler Harris asked the Chief the reason for termination and about our ability to appeal the unlawful termination decision. The chief became upset and said he was not required to disclose any information concerning an employee to an attorney. Chief then officially ordered my attorney exit the building, stating, "This is a private police area only, you need to leave or you're subject to arrest." My attorney left and met me in the police station lobby after I surrendered all my equipment to Lt. Limon and Norma Bribiesca (Office Manager).

III.    DAMAGES AND RELIEF REQUESTED

1. I am requesting a full investigation of the Guadalupe Police Department and its policies and procedures;
2. I am requesting that my California State Profile and Records be updated to properly reflect all my time and service training completed at Guadalupe Police Department;
3. I am requesting that I be issued a CA POST Basic certificate that I would otherwise have been qualified for but for the wrongful termination; and
4. I am requesting backpay since the date of my termination.

---

[3] https://docs.sandiego.gov/memooflaw/ML-95-55.pdf

5. Any and all remedies provided by *Cal. Gov't Code*, § 3309.5, for the Guadalupe Police Department's violations of my POBR Rights, including a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each and every violation.

## IV.    SWORN STATEMENT

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and belief.

**Dated:** _____09/10/2024_____          **Signature:** _____
                                                                Andrew Breda (Sep 10, 2024 14:54 PDT)

                                                                *ANDREW NOEL BREDA,*
                                                                *POLICE OFFICER LATERAL*

**Enclosures:** *as indicated.*

Exhibit F - 45

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit "G"

DECLARATION OF JERRY L. STEERING IN SUPPORT OF EX PARTE APPLICATION
TO ENLARGE TIME TO SERVE DEFENDANT ANDREW BREDA

16

**Can you accept service in the case of Joseph Bernardo and Jessica Garcia as guardian ad litem for v. Minors J.J.B. II and J.J.B. III v. City of Guadalupe; Andrew Breda; Frank Medina; Christopher Orozco; and DOES 1 through 10, inclusive, Case 2:24-cv-09493-FMO-MAA.**

**Me**    Me <jerry@steeringlaw.com>
         Mon, 27 Jan 2025 7:58:54 PM -0800  ○

To    "louiskosnett" <louiskosnett@kosnettlaw.com>, "danyakobian"
      <danyakobian@kosnettlaw.com>, "Jerry Steering" <jerry@steeringlaw.com>, "Jerry
      Steering" <jerrysteering@yahoo.com>, "gregorypeacockesq"
      <gregorypeacockesq@gmail.com>, "greg" <greg@gregpeacocklaw.com>

Gentlemen:

Can you accept service of the Summons and Complaint in the case of *Joseph Bernardo and Jessica Garcia as guardian ad litem for v. Minors J.J.B. II and J.J.B. III v. City of Guadalupe; Andrew Breda; Frank Medina; Christopher Orozco; and DOES 1 through 10, inclusive*, Case 2:24-cv-09493-FMO-MAA; copies of which are attached hereto.

I saw that your law firm is counsel of Andrew Breda in the case of Andrew Breda v. City of Guadalupe; Santa Barbara Superior Court Case Number 24CV07129.

I have been trying to serve Andrew Breda at the Dillingham Police Department in Alaska, but I have received no response to my sending him the Summons and Complaint and F.R.Civ.P. 4 Waiver of Service of Summons and the Acknowledgement of Receipt of Summons and Complaint at the Dillingham Police Department.

I need to serve Andrew Breda in the Bernardo case, above-referenced, and am requesting you Gentlemen to accept service of the Summons and Complaint for him.

When Andrew Breda is served he can then request the City of Guadalupe to defend him in this lawsuit, and they must defend him and indemnify him for all compensatory damages. However, if I have to serve him by publication, and I take his default, the City will not be obligated to pay any judgment that I obtain against him.

So, if you would be so kind, please advise if you Gentlemen can accept Service of the Summons and Complaint for Andrew Breda. If so, please date and sign the attached NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT and please email the executed form back to me forthwith.

Thank you for your anticipated cooperation in this matter.

**Jerry L. Steering, Esq.**
**LAW OFFICE OF JERRY L. STEERING**
4063 Birch Street, Suite 100
Newport Beach, CA 92660
(949) 474-1849 Office
(949) 292-7825 Cell
Email:  jerry@steeringlaw.com
Website:  www.steeringlaw.com



3 Attachment(s)  ·  Download as Zip

DOC 1 - Complaint.pdf
214.1 KB  ·

DOC 12 - Issued Summons.pdf
238.8 KB  ·

NOTICE OF LAWSUIT AND R….pdf
194 KB  ·

Exhibit G 2